UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 2004CV10791RCL

| | |
|---|---|
| SUSAN SEARLE,<br>          Plaintiff,<br><br>v.<br><br>TOWN OF SALISBURY, SALISBURY<br>POLICE DEPARTMENT, and LAWRENCE<br>STREETER,<br>          Defendants. | DEFENDANTS' MEMORANDUM IN<br>SUPPORT OF THEIR MOTION FOR<br>SUMMARY JUDGMENT |

I.    INTRODUCTION

The plaintiff, Susan Searle, ("Searle") filed an eight (8) count complaint against the

defendants, the Town of Salisbury ("Town"), the Town of Salisbury Police Department

("Department") and Lawrence Streeter ("Streeter").  In Counts I and II, Searle alleges that

Defendants discriminated against her on the basis of her gender and sexually harassed her in

violation of M.G.L. c. 151B, M.G.L. c. 214, §1C and 42 U.S.C. §2000e-2(a)(1).  In Counts III

and IV, Searle alleges federal and state unequal pay claims pursuant to 29 U.S.C. §§206(d) and

216 and M.G.L. c. 93, §§102, 103.  In Count V, Searle alleges that Defendants, in violation of 42

U.S.C. §1983, engaged in an ongoing pattern of infringing upon Searle's rights, including her

right to be free from sexual harassment, her right of equal protection, her right to be free from

retaliation, her right to fair disciplinary proceedings, her right to be free from intimidation, her

right to privacy, her due process rights, her right to be safe in the workplace, her right to a fair

hearing and her right to be left alone.  In Counts VI and VII, Searle alleges that Defendants

terminated her without cause in breach of her employment agreement and in breach of the

implied covenant of good faith and fair dealing.  In Count VIII, Searle asserts a claim against

Defendants of intentional and negligent infliction of emotional distress.

Defendants respectfully submit that they are entitled to an entry of judgment as a matter of law as to all counts against them for the reasons detailed below.

II.     FACTS & PROCEDURAL HISTORY

Defendants rely upon and incorporate herein their Local Rule 56.1 Statement of Facts. Defendants' Statement of Facts will be referred to below as "SOF ¶___."

III.     ARGUMENT

A.     Summary Judgment Standard.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter law." Fed.R.Civ.P. 56(c). In order to defeat a summary judgment motion, "the non-moving party must demonstrate the existence of a genuine issue of material fact pertaining to those issues on which it would bear the burden of proof at trial." Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1171 (1st Cir. 1988). Under Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987), summary judgment is appropriate where the non-moving has the burden of proof and "fails to make a showing sufficient to establish the existence of an element essential to that party's case."

B.     The Salisbury Police Department Is Not A Proper Party To This Matter.

In her Complaint, Searle has named the Salisbury Police Department as a separate defendant in this matter. Under G.L. c.151B, the definition of "employer" includes the "commonwealth and all political subdivisions, boards, departments and commissions thereof." G.L. c.151B, § 1(5). Thus, the Department is not a separate and distinct legal entity from the Town under c.151B. See id. Moreover, the courts have consistently held, predominantly in §1983 cases, that a suit against a police department or a municipal officer in their official

capacity is tantamount to a claim against the municipality.  See Cronin v. Town of Amesbury, 895 F.Supp. 375, 383 (D.Mass. 1995); Curran v. City of Boston, 777 F. Supp. 116, 120 (D. Mass. 1991).  For these reasons, the Department should be dismissed as a defendant in this action.

      C.    Searle's Claims Under M.G.L. c. 214, §1C And M.G.L. 93, §§102, 103 Are Barred By The Exclusivity Provisions Of G.L. c. 151B (Counts I and IV).

In Count I, Searle alleges that Defendants engaged in various acts that were discriminatory, sexually harassing and/or retaliatory in violation of M.G.L. c. 214, §1C.  She also alleges in Count IV that Defendants compensated female employees less than male employees for equal work in positions requiring equal skill, effort and responsibility in violation of M.G.L. c. 93, §§102, 103, the Massachusetts Equal Rights Act.

It is well-settled under Massachusetts law that the exclusivity provisions of M.G.L. c. 151B bar parallel claims under c. 214, §1C.  Green v. Wyman-Gordon Company, 422 Mass. 551, 555 (1996).  Since there is little if any distinction between Searle's claims under M.G.L. c. 214 and her claims under M.G.L. c. 151B in this matter, Searle's c. 214 claims should be dismissed.

Similarly, the Massachusetts Equal Rights Act does not create an independent right to vindicate an alleged wrong that can otherwise be redressed under G.L. c. 151B.  Cargill v. Harvard University, 60 Mass.App.Ct. 585, 604 (2004).  Where applicable, c. 151B is the exclusive state remedy for employment discrimination claims.  Id.  Since Searle has already alleged in Count I that Defendants discriminated against her on the basis of her gender in violation of M.G.L. c. 151B, in part based on a claim of unequal pay, Searle's claim under G.L. c. 93, §102 is barred by the exclusivity provisions of c. 151B.  Id.

D.    Even If Searle's Claims Under M.G.L. 93, §§102, 103 Are Not Barred By The Exclusivity Provisions Of G.L. c. 151B, Such Claims, And Her Corresponding Claim Under The Federal Equal Pay Act, Find No Support In The Record (Counts III And IV).

1.  Federal Equal Pay Act claim.

To establish a prima facie case of sex discrimination based on salary disparity under the federal Equal Pay Act, Searle must show that the Town was subject to the Act and that she was paid less than her male counterparts who were performing work requiring substantially equal skill, effort, and responsibility under similar working conditions. McMillan v. Massachusetts Soc. for Prevention of Cruelty To Animals, 140 F.3d 288, 298 (1st Cir. 1998). If Searle is successful in this regard, the Town must then prove by a preponderance of the evidence that the pay disparity can be explained by a legitimate factor such as seniority or performance. Id.

To begin with, Searle has not identified any male reserve police officer who actually received a higher rate of pay to serve as a dispatcher than she did. For this reason alone, her claim must should be dismissed.

In addition, all of the full-time dispatchers that were employed by the Department were members of a collective bargaining unit for which the American Federation of State, County and Municipal Employees, Council 93, Local 939 ("AFSCME") served as the exclusive bargaining agent with respect to the full-time dispatchers' wages, hours and other conditions of employment. SOF ¶¶29 – 32; Exhibit A at 4. As such, all full-time dispatchers' salaries were set by the terms of the collective bargaining agreement that was entered into between the Town and AFSCME (hereinafter, "CBA"). SOF ¶30; Exhibit A at 15. To the extent there was any variation between the hourly rates that were paid to full-time dispatchers, the variations were based on the individual's years of service with the Department as specified in Article 26 of the CBA (see Exhibit A at 15) which is permissible under the Act. See McMillan, 140 F.3d at 298.

Moreover, it is undisputed that the Department did not employ any full or part-time male dispatchers during the period that Searle was still actively working there. SOF ¶35; Searle Deposition at 160-61, 190. To the extent that males performed any dispatcher functions prior to that time, the individuals who did so were not actually dispatchers, but instead were reserve police officers who had received police academy training, had full police powers and whose positions required them to perform police patrols in the community, to work details whenever necessary and to assume all of the risks and responsibilities that are attendant to same. SOF ¶¶13-15, 36; Searle Deposition at 160-61. This is in contrast to Searle who was not a reserve officer, did not possess any police academy training, did not have any police powers and who was not required to work patrols or details. SOF ¶¶19, 24; Searle Deposition at 118; 160. Thus, the male employees to whom Searle seeks to compare herself were not her "counterparts" within the meaning of the statute. See McMillan, 140 F.3d at 298.

Finally, Searle's argument fails to take into account that reserve police officers were essentially per diem officers who did not receive any fringe benefits. SOF ¶33. This is in contrast to Searle and the other full-time dispatchers who, under the terms of the AFSCME CBA, received health insurance benefits, holiday pay, paid vacation, sick, bereavement and personal leave, a sick leave buyback benefit and other fringe benefits. Exhibit A at 11-15. Under 29 CFR 1620.10, such remuneration is included when assessing whether employees are being paid equal "wages" within the meaning of the Equal Pay Act. Thus, Searle cannot demonstrate that any male reserve police officer was compensated more than she was for working dispatch.

2.   Equal pay claim pursuant to Massachusetts Equal Rights Act.

As noted earlier, Searle's claim under G.L. c. 93, §102[1] is preempted by c. 151B.  Cargill, 60 Mass.App.Ct. at 604.  Even were it not, however, her claim is nonetheless subject to dismissal for the reasons articulated in subsection one (1) immediately above.  See Lecrenski Bros. Inc. v. Johnson, 312 F.Supp.2d 117, 121 (D.Mass. 2004).

E.   Searle Cannot Make Out A Prima Facie Case Of Breach Of Contract And Even If She Could, She Has Not Exhausted Her Administrative Remedy With Respect To Such Claim (Count VI).

The record does not contain evidence of any contract existing between Searle and the Town or Searle and Streeter.  On this basis alone, Searle's breach of contract claim should be dismissed.

Also, while it is true that Searle's employment with the Town was governed by the CBA between the Town and AFSCME[2] (see Exhibit A at 4), it is well established that a member of a bargaining unit cannot assert rights under a collective bargaining agreement in a judicial forum on his/her own.  Peabody Federation of Teachers, Local 1289, AFT, AFL-CIO v. School Comm. of Peabody, 28 Mass.App.Ct. 410, 414 (1990); Johnston v. School Committee of Watertown, 404 Mass. 23, 25 (1989).  As such, Searle cannot proceed on a breach of contract claim where the contract that has allegedly been breached is the CBA between the Town and AFSCME.  See id.

Additionally, it is undisputed that a grievance over Searle's termination is currently pending.  Exhibits I and J; Searle Deposition at 314-15.  Therefore, even if Searle could proceed on her breach of contract claim, she was required to exhaust the remedies specified in the CBA

---

[1] In Count IV of her Complaint, Searle asserts a claim pursuant to both §102 and §103 of M.G.L. c. 93.  However, claims under §103 are limited to claims of unequal treatment on the basis of handicap or age, neither of which Searle is alleging in the instant matter.  As such, Searle's claim under §103 should be dismissed.  M.G.L. c. 93, §103.
[2] Streeter was not a party to the CBA.  See Exhibit A at 16.

before she could resort to the courts and has not done so.  O'Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 695 (1996).

      F.     <u>Searle Has Failed To Make Out A Prima Facie Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing (Count VII).</u>

The claim of breach of the implied covenant of good faith and fair dealing is a common law claim that assumes the existence of an employee-at-will relationship.  See McCone v. New England Tel. & Tel. Co., 393 Mass. 231, 233 n.6 (1984).  Since Searle's employment was covered by the terms of the CBA which contained a "just cause" provision (see Exhibit A at 14), by definition, her employment was not at-will and thus, the implied covenant of good faith and fair dealing is not applicable.  See Tenedios v. Wm. Filene's & Sons, Co., Inc., 20 Mass.App.Ct. 252, 254 (1985).

However, even if it were, Searle has failed to exhaust her administrative remedy under the CBA.  See O'Brien, 422 Mass. at 695.

      G.     <u>Searle's Claims Against The Town And Streeter For Intentional And Negligent Infliction Of Emotional Distress Are Barred By The Exclusivity Provision Of M.G.L. c. 152 (Count VIII).</u>

In general, common law tort actions against an employer are barred by the exclusivity provision of the state workers' compensation act where the plaintiff is shown to be an employee, his condition is shown to be a personal injury within the meaning of the workers' compensation act and the injury is shown to have arisen out of and in the course of employment.  M.G.L. c. 152, §24; Green v. Wyman-Gordon Company, 422 Mass. 551, 558 (1996).  Courts have broadly construed the third criterion to include any injury that arises out of the "nature, conditions, obligations or incidents of employment; in other words, out of the employment looked at in any of its aspects." Doe v. Purity Supreme, Inc., 422 Mass. 563, 566 (1996).  "It makes no difference that the emotional distress results from a fellow employee since the injury is still compensable

under the workers' compensation act." <u>Green</u>, 422 Mass. at 558.  This includes claims against an employer that are based upon intentional torts committed by co-employees.  <u>See</u> <u>Purity Supreme</u>, 422 Mass. at 566.

The foregoing also applies equally to negligence claims against a co-employee in his individual capacity so long as the conduct at issue was committed within the scope of the co-employee's scope of employment.  <u>Anzalone</u> v. <u>Massachusetts Bay Transportation Authority</u>, 403 Mass. 119, 124 (1988).  Similarly, intentional tort claims against a co-employee that arise out of the employment relationship are barred by the exclusivity provision of the statute unless the employee has reserved a right of action pursuant to M.GL. c. 152, §24.  <u>Id.</u>

In the instant matter, Searle has alleged that the Town, by its agents Streeter and Simmons, intentionally and/or negligently engaged in a pattern of extreme or outrageous conduct by sexually harassing her and by discriminating against her on the basis of her gender.  Complaint at ¶98.  All of the events upon which Searle is relying to support such claims are alleged to have taken place while Searle and either Streeter or Simmons were working and there is no allegation by Searle that she was connected to Streeter and/or Simmons in any way except through their respective employments with the Town.  As such, Searle's claims against the Town for intentional and negligent infliction of emotional distress arose out of and in the course of her employment within the meaning of M.G.L. c. 152 and are therefore barred by the exclusivity provision of that statute.   <u>See</u> <u>Purity Supreme</u>, 422 Mass. at 566; <u>Green</u>, 422 Mass. at 558.

Similarly, the exclusivity provision of M.G.L. c. 152 also bars Searle's claims against Streeter individually.  Streeter's complained-of conduct, to wit, his alleged discriminatory and retaliatory treatment of her in her terms and conditions of employment, related wholly to his position as Searle's supervisor and to the manner in which he exercised his supervisory duties.

As such, the conduct complained of arose in the course of the Town's employment of Searle and Streeter within the meaning of M.G.L. c. 152.  See Anzalone, 403 Mass. at 125.  Therefore, Searle's negligence claim against Streeter is barred by the exclusivity provision of c. 152, as is her intentional tort claim against him since there is no allegation by her that she reserved a right of action pursuant to M.GL. c. 152, §24.  See id. at 124-25.

> H.    Even If Not Barred By M.G.L. C. 152, Searle's Claims Against The Town For Intentional And Negligent Infliction Of Emotional Distress And Against Streeter For Negligent Infliction Of Emotional Distress Are By M.G.L. c. 258 (Count VIII).

To the extent Searle has asserted a claim for intentional infliction of emotional distress against the Town, said claim must fail for the additional reason that a municipality is immune from liability for intentional torts committed by its employees, agents or representatives.  M.G.L. c. 258, §10(c); see Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 284-85 (1985).

As for Searle's negligence claim against the Town, the Massachusetts Tort Claims Act ("MTCA") mandates that no civil action may be instituted against a town for any injury caused by negligence "unless the claimant shall have first presented his claim in writing to the executive officer of such employer within two (2) years after the date upon which the cause of action arose."  G.L. c. 258, §4.  Proper presentment of a claim is a condition precedent to bringing suit under the MTCA.  Krasnow v. Allen, 29 Mass. App. Ct. 562, 566 (1990) rev. denied 409 Mass. 1102 (1990).  In raising a defense of defective presentment, a public employer need show no prejudice resulting from the plaintiff's failure to give proper notice as required by the MTCA, and constructive notice of the claim in question is insufficient to satisfy the MTCA's presentment requirement.  Robinson v. Commonwealth of Massachusetts, 32 Mass. App. Ct. 6, 9-10 (1992) citing Weaver v. Commonwealth of Massachusetts, 387 Mass. 43, 47-48 (1982).  A review of the record in this case does not reveal that Searle ever fulfilled this requirement.

As for Searle's negligence claim against Streeter, all of the alleged conduct on the part of Streeter relates solely to his position as Searle's supervisor and to the manner in which he exercised his supervisory duties.  It is well-settle that G.L. c. 258, §2 bars claims against public employees for negligent acts committed within the scope of their employment.  Schenker v. Binns, 18 Mass.App.Ct. 404, 405 (1984).

     I.     <u>Even if not barred by M.G.L. c. 258, Searle's claim against Streeter for intentional infliction of emotional distress fails on its merits (Count VIII).</u>

To establish her intentional infliction of emotional distress claim, Searle must demonstrate (1) that Streeter intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of the conduct, (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community, (3) that the actions of Streeter were the cause of the Searle's distress and (4) that the emotional distress sustained by Searle was severe and of a nature that no reasonable person could be expected to endure it.  Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976); Conway v. Smerling, 37 Mass.App.Ct. 1, 8 (1994).  In the context of such a claim, "outrageous" means "more than workaday insults, annoyances, or even threats and petty oppressions."  Conway, 37 Mass.App.Ct. at 8.  "It means, for example, a high order of reckless ruthlessness or deliberate malevolence that…is simply intolerable."  Id.  "These requirements are 'aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved.'"  Agis, 371 Mass. at 145 quoting Womack v. Eldredge, 215 Va. 338, 342 (1974).

Searle has not alleged that Streeter engaged in what could be considered extreme and outrageous conduct toward her.  While she contends that he made a negative comment to her about her glasses and about her outgrowing her chair, Searle testified that Streeter himself never

called her a slut or other derogatory names and she has not alleged that he made any sexual advances toward her.  Searle Deposition at 199-200, 204, 207-08, 240.  The majority of the alleged actions by Streeter that she complains of relate to his allegedly discriminatory treatment of her in her terms and conditions of employment and his recommendation that she be terminated.  Even were Searle to prove all of these allegations, they do not rise to the level of outrageousness that is required to make out a claim for intentional infliction of emotional distress.  See Conway, 37 Mass.App.Ct. at 8.

      J.      Searle Failed To Exhaust Her Administrative Remedies With Respect To Her Sexual Harassment Claims under M.G.L. c. 151B or Title VII (Counts I and II).

In order to bring a claim under M.G.L. c. 151B or Title VII for sexual harassment, Searle was required to first file an administrative charge with the Massachusetts Commission Against Discrimination ("MCAD").  Jorge v. Rumsfeld, 404 F.3d 556, 564-65 (1st Cir. 2005); Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 531 n. 11 (2001).  The failure to set forth a claim at the agency level generally warrants dismissal of the claim.  Id.  A claim that was not explicitly included in an agency charge may survive such a dismissal if it was within the scope of the agency investigation.  Davis v. Lucent Tech., Inc., 251 F.3d 227, 233 (1st Cir. 2001).  For a claim to fall within the scope of the investigation though, the plaintiff must "describe the essential nature of the claim [in the administrative charge] and … identify the core facts on which it rests." See Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996).

Searle's initial charge at the MCAD alleged only a claim of gender discrimination and did not allege that Streeter, Simmons or any other Town employee sexually harassed her or otherwise created a hostile work environment for her.  See Exhibit E.  Prior to removing her charge to Superior Court, Searle filed a motion to amend her MCAD charge to add Streeter as a defendant and to add a claim for retaliation as a result of the Town's scheduling of her pre-

disciplinary hearing.  See Exhibit G.  Searle did not seek to amend her charge to add a sexual

harassment/hostile work environment claim nor did she seek to add an allegation tied to

Simmons' or Streeter's allegedly harassing conduct toward her.  See id.  By failing to raise such

allegations before the MCAD, Searle has failed to exhaust her administrative remedies with

respect to such claims and is therefore precluded from pursuing them in this action.  See

Cuddyer, 434 Mass. at 531, n.11.

        In addition, a review of the record does not reveal that Searle ever received the requisite

right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") in

connection with her Title VII claims against Defendants or that if said agency failed to take

action on her complaint, that she filed the instant action within the requisite time period.  In the

absence of such evidence, Searle is further precluded from pursuing her Title VII claims in this

action.  See Jorge, 404 F.3d at 564-65.

        K.    Searle's Discrimination And Harassment Claims Under M.G.L. C. 151B And
              Title VII Are Also Time-Barred (Counts I and II).

        At the time Plaintiff filed her Complaint in this matter, a claimant seeking relief pursuant

to G.L. c. 151B was required to first file a complaint with the MCAD within six (6) months of

the alleged unlawful acts.  Cuddyer, 434 Mass. at 531 n. 11.  Similarly, a claimant seeking relief

under Title VII was required to first file a complaint with the EEOC within 180 days of the

alleged unlawful employment practice.  Jorge, 404 F.3d at 564-65.  It is well-settled that failure

to file a complaint within the required statute of limitations period will render the relevant claims

time-barred.  Jorge, 404 F.3d. at 564-65; Flynn v. New England Telephone, 615 F.Supp. 1205

(D.Mass.1985).  Claims of discrimination that are beyond the six (6) month limitation period are

generally subject to dismissal for lack of timeliness unless the plaintiff alleges facts which

indicate that the unlawful conduct complained of is of a continuing nature *and the plaintiff's*

*delay in raising the otherwise untimely matters was not unreasonable*. See Cuddyer 434 Mass. at 539 (emphasis added). To establish a continuing violation, a plaintiff must ordinarily prove that "(1) at least one discriminatory act occurred within the six month limitations period; (2) the alleged timely discriminatory acts have a substantial relationship to the alleged untimely discriminatory acts and (3) earlier violations outside the six-month limitations period did not trigger [the plaintiff's] 'awareness and duty' to assert his rights." Ocean Spray Cranberries v. Massachusetts Commission Against Discrimination, 441 Mass. 632, 643 (2004).

In the instant matter, Searle filed her charge of discrimination with the MCAD on August 29, 2001. Exhibit E. As such, to the extent that Searle is attempting to rely on any incidents that occurred prior to February 29, 2001 to support her discrimination and harassment claims against Defendants, such incidents are time barred and cannot form the basis of liability. See Ocean Spray, 441 Mass. at 647; Cuddyer 434 Mass. at 530 n.10.

At her deposition in this matter, Searle was unable to recall when the conversations with Streeter in which he allegedly refused to let her work details because she is a woman other than stating that is was sometime during the four (4) year period of her second tenure. Searle Deposition at 155. Searle also was unable to recall when she purportedly submitted an application to Streeter to attend the police academy. Id. In the absence of an allegation that Streeter's allegedly discriminatory refusals occurred within the limitations period, such claims must be dismissed as time barred.[3]

As for the allegedly harassing conduct of Simmons, Searle testified that he allegedly began calling her a "slut" in 1999 and that this coincided with his making requests to her to sit on his lap. Id. at 204, 209-10. When asked at her deposition if she believed at that time that

---

[3] The remaining discriminatory actions allegedly undertaken by Streeter, i.e. dispatcher pay rate and dress code disparities, are not supported by the record as will be discussed below.

Simmons' conduct constituted sexual harassment she responded that she did.  Id. at 232-33.

Notwithstanding this fact, Searle did not file her charge of discrimination in this matter until

August 29, 2001.  See Exhibit E.  Even then, however, Searle did not raise any allegation in her

charge that she was being sexually harassed by Simmons nor did she raise such an allegation in

the motion to amend the charge she filed with the MCAD in December 2001, as was noted

above.  See Exhibits E and G.  It was not until she filed her Complaint in this matter that she first

raised an allegation that Simmons had sexually harassed her.  See Complaint.  Even were Searle

to argue that her claims related to Simmons' conduct should be allowed to proceed under a

continuing violation theory, her failure to file a charge of discrimination in 1999 when she first

formulated her belief that his conduct constituted sexual harassment was not reasonable under

the circumstances.  See Ocean Spray, 441 Mass. at 643; Cuddyer 434 Mass. at 539.  As such, the

continuing violation theory of recovery is not available to her with respect to her claims against

Defendants that relate to Simmons' alleged conduct.  Id.

   L.    **Even if not time barred, Searle's gender discrimination, retaliation and sexual harassment claims against Defendants should be dismissed on their merits (Counts I – IV).**

       1.    Gender discrimination claims

       To succeed in her unlawful gender discrimination claim against Defendants, Searle bears

the burden of proving that she was intentionally discriminated against based upon her status as a

member of a protected class.  See Dartt v. Browning-Ferris Industries, Inc., 427 Mass. 1, 12

(1998); Brunner v. Stone & Webster Eng'g Corp., 413 Mass. 698, 699 (1992); McKenzie v.

Brigham & Women's Hospital, 405 Mass. 432, 434 (1989); Smith College v. Massachusetts

Comm'n Against Discrimination, 371 Mass. 130, 138-139 (1978).  In the absence of direct

evidence of discrimination, Searle may prove her case using the three-stage inferential method of

proof articulated by the United States Supreme Court in McDonnell-Douglas Corp. v. Green, and subsequently adopted by the Massachusetts Supreme Judicial Court.  Wheelock College v. Massachusetts Commission Against Discrimination, 371 Mass. 130 (1976). Under this three-step analysis, Searle must first prove a prima facie case of discrimination.  See Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 127 (1997); Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 440 (1995); Wheelock College v. Massachusetts Commission Against Discrimination, 371 Mass. 130 (1976).  If Searle meets this burden, Defendants may rebut her prima facie showing by demonstrating that they had legitimate, non-discriminatory reasons for taking the action that is being contested.  See Matthews, 426 Mass. at 127; Blare, 419 Mass. at 440.  The reasons given for a decision may be unsound or even absurd and the action may appear arbitrary or unwise, but Defendants nonetheless will have met their burden. Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 128 (1997).  Assuming Defendants succeed in this regard, the burden then shifts back to Searle to persuade the fact finder, by a preponderance of evidence, that the reason articulated is not the real reason, but a pretext aimed at covering up a discriminatory motive.  See Blare, 419 Mass. at 444-45.  If Defendants' reasons are not discriminatory and if Searle does not prove that they are pretexts, Searle cannot prevail. Lewis v. Area II Homecare For Senior Citizens, Inc., 397 Mass. 761, 766 (1986).

In the instant matter, Searle has alleged that Defendants discriminated against her on the basis of her gender by refusing to allow her to work paid details, by imposing a dress code on her that was different from that applicable to male employees, by compensating her less than males for equal work, by terminating her from her position with the Town and by creating, fostering and encouraging a hostile work environment.  Searle's claims with respect to each of these areas will be addressed below.

a.    Paid details

In order to establish a prima facie case of discrimination concerning Defendants' refusal to permit her to work paid details, Searle is required to demonstrate that she was qualified to perform the duties at issue and further, that she was treated differently than male employees. See Nassab, 25 MDLR at 442 (2003) citing Abramian v. President and Fellows of Harvard College, 432 Mass. 104, 116 (2000). With respect to the former, the record reflects that employees needed to be police academy trained and possess full police powers as either a full-time or reserve police officer before Streeter would permit them to work paid details. SOF ¶¶16-17. The rationale for this policy was that working paid details was no less of police work than working patrols. The ability and authority to maintain public safety and order were equally important and necessary elements of both. SOF ¶¶13-15. If an incident arose at the detail site that required a police response, such response would be delayed and the public safety jeopardized if the individual assigned to the detail did not possess the level of training, authority and power needed to effectively deal with the situation. As a result, Streeter did not permit any employees, male or female, to work a paid detail who was not police academy trained and empowered as a police officer to effectuate arrests. SOF ¶16.

It is undisputed that Searle was not a police officer with the Town and therefore, did not possess the requisite training and accompanying police powers. Searle Deposition at 118, 160. While Searle contends that Streeter stated to her that he would not sponsor her to receive the requisite training, Streeter denies that allegation and instead, asserts that he advised Searle that if she wished to work details, she could fill out an application to become a reserve police officer,[4] a fact that Searle admitted to at her deposition. SOF ¶23; Searle Deposition at 151-52. By her

---

[4] That Streeter sponsored two (2) females for the police academy one of whom was seeking to become a reserve police officer with the Town during Searle's tenure serves to support Streeter's version of events. See SOF ¶¶27-28.

own admission, Searle never submitted an application to become a reserve police officer and concluded that the reason for this was that she had no interest in becoming a police officer and working the police patrols that would have accompanied same.  Searle Deposition at 160-62. She merely wished to work the paid details.  Id.  Since Searle was not a reserve police officer, she was not "qualified" to perform paid details.  Abramian, 432 Mass. 116.

In addition, the record reflects that Defendants did not permit any male employees to work paid details who were not either full-time or reserve police officers who possessed the requisite police academy training and legal police powers.  SOF ¶17.  Searle concedes that the male employees who performed dispatcher functions to whom she has sought to compare herself were, as noted earlier, reserve police officers who had been police academy trained, had full police powers and who for all intents and purposes had all of the duties and responsibilities of regular, full-time police officers whenever they worked.  Id.

In short, the record reflects that Searle was not qualified to work paid details and there is no evidence that Defendants treated Searle any differently than they treated male employees who were not police officers and similarly lacked the requisite training and authority.  In light of this, Defendants' refusal to permit Searle to work paid details cannot form the basis for recovery against Defendants for gender discrimination.

b.    <u>Dress code</u>

It has been alleged by Searle that female dispatchers were subjected to a dress code that was different from that which applied to males.  As has already been noted numerous times, however, the Department did not employ any male dispatchers during the period of time that Searle was still physically working there.  SOF ¶35; Searle Deposition at 160-61; 190.  Searle readily acknowledges that the males who were working in dispatch that she is alleging were

treated differently were reserve police officers.  Searle Deposition at 185-86.  She also concedes

that when they worked in dispatch, the reserve police officers were required to wear their police

officer uniforms.  See id.  While the color of their shirts may have been different, reserve

officers were nonetheless required to wear their assigned uniforms when working dispatch.  SOF

¶¶20-22.

          c.        Unequal pay

As was argued in Section D above, which arguments are incorporated herein by

reference, the record does not support a finding that Searle or any other female dispatcher was

compensated less than a male dispatcher for equal work in positions requiring equal skill, effort

and responsibility under similar working conditions as Searle has alleged.

          d.        Searle's termination

To make out a prima facie case of gender discrimination involving a termination, a

plaintiff must show membership in a protected class, satisfactory job performance, termination

and the hiring of a replacement who possesses similar skills.  Zhang v. Massachusetts Institute of

Technology, 46 Mass.App.Ct. 597, 601 (1999).  Searle has failed to meet that burden.

To begin with, Searle has not alleged that the Town hired a replacement who possessed

similar skills as she did.  For this reason alone, her claim should be dismissed.  See Zhang, 46

Mass.App.Ct. at 601.

Even if Searle were able to make out a prima facie case, the record reflects that the Town

possessed legitimate, non-discriminatory reasons to terminate Searle's employment.  See

Matthews, 426 Mass. at 127; Blare, 419 Mass. at 440.  More specifically, Streeter met with

Searle on August 1, 2001 to discuss with her various issues regarding her work performance.

SOF ¶47.  Streeter presented her with a three-ring binder that contained copies of numerous

documents the majority of which were notes from Streeter to Searle pointing out that certain

necessary information was not present in the log entries she made or inquiring as to why certain

action was not taken by her.  SOF ¶48.  This included not assigning officers to calls, not entering

vehicle tow information in the log or not including other information in the log that should have

been included.  Id.  After the meeting, Streeter issued Searle a memorandum warning her that

continued performance issues of the same or similar nature would lead to probable suspension

and possible termination.  SOF ¶49; Exhibit C.

This was followed by Streeter subsequently learning that Searle had previously initiated a

209A restraining order process for her daughter while she was on duty as a dispatcher for the

Department.  SOF ¶51.  Under the Department's rules and regulations, dispatchers were not

permitted to unilaterally initiate the 209A process, but instead were required to receive

authorization from an officer to do so.  SOF ¶52; Searle Deposition 92-100.  Upon learning this,

Streeter advised Searle that he had assigned Internal Affairs to investigate the allegation and that,

if substantiated, the allegation could affect her continued employment with the Town. Exhibit D.

Thereafter, Internal Affairs substantiated an earlier filed allegation that had been made

against Searle by another officer for failing to assign an officer to a call and also concluded that

Searle did in fact initiate the 209A process for her daughter while on duty as a dispatcher without

prior authorization.  SOF ¶¶54, 57.

All of this ultimately led to the Town holding a hearing to determine if there was just

cause to discipline her, up to and including termination of her employment.  Exhibit F.  At the

disciplinary hearing that was held, Searle, although present, did not testify nor did she call any

witnesses to testify on her behalf.  SOF ¶61.  Essentially, the only evidence that was before the

Town Manager was the information presented by the Chief.  Id.  Since there was little in the

record to refute the allegations against her, the Town Manager concluded that there was just cause to terminate Searle.  Exhibit H at 2.

As demonstrated by the foregoing, the Town had legitimate, non-discriminatory reasons to terminate Searle's employment.  Her unauthorized issuance of a 209A order on behalf of a family member by itself was sufficient cause for her dismissal.  It is undisputed that Searle personally invoked the 209A process on behalf of her daughter while on duty and it is also undisputed that she never received express authorization from a police officer supervisor to do so.  Searle Deposition at 280-86.  Prior to Searle, no other Department employees were found to have initiated the 209A process for a family member without authorization and Searle has not identified any similarly situated male employees who were treated differently than she was. When coupled with her failure to assign an officer to a call and her prior poor work performance, Searle's discharge was even further justified.  Since the Town possessed legitimate, non-discriminatory reasons for terminating her, said termination cannot stand as a basis for recovery for Searle for gender discrimination.  See Blare, 419 Mass. at 444-45.

2.    Retaliation claims

To establish a prima facie case of retaliation, Searle must demonstrate that 1) she engaged in a protected activity; 2) that the Town was aware of the protected activity; 3) that she was subsequently subjected to an adverse employment action; and 4) in the absence of other evidence establishing retaliatory intent, the adverse action followed the protected activity within such time that retaliatory motive can be inferred.  See Ritchie v. Department Of State Police, 60 Mass.App.Ct. 655, 664-65 (2004); Nassab v. Massachusetts General Hospital, 22 MDLR 429, 444 2003).  If Plaintiff establishes a prima facie case, the burden shifts to the Town to articulate and produce credible evidence to support a legitimate non-retaliatory reason for its action.

Nassab, 22 MDLR at 445 citing Weber v. Community Teamwork, Inc., 434 Mass. 761, 768-69 (2001); Abramian, 432 Mass. at 116; Wynn & Wynn v. MCAD, 431 Mass. 655, 665 (2000).  If the Town in turn meets this burden, Plaintiff must then show by a preponderance of the evidence that the proffered reason is not the real reason for the action taken and that said conduct was motivated by a retaliatory animus.  See Lipchitz v. Raytheon Company, 434 Mass. 493, 504 (2001).

Prior to filing her initial complaint at the MCAD on August 29, 2001, Searle had not filed any complaints with the Town about Streeter's use of the word "sluts" nor had she advised Streeter or any Town officials that Simmons had been referring to her as a "slut", had attempted to place his hand down her shirt, had invited her to sit on his lap or that he had exposed himself to her.  Searle Deposition at 205; 227-38; SOF ¶56.  As of the date that Searle filed her charge at the MCAD, Streeter had already issued Searle a written reprimand for her poor performance, had placed her on administrative leave pending the outcome of the 209A investigation and was in the process of reviewing the Internal Affairs report substantiating the failure to assign an officer.  See SOF ¶¶46-51; Exhibits C and D.  These facts preclude an inference of retaliatory motive from being drawn from the timing of her discharge.

Even assuming, however, that Searle can establish a prima facie case of retaliation, the Town possessed legitimate, non-retaliatory reasons for dismissing Searle, as was discussed in the preceding section and which are incorporated herein by reference.

3.    Sexual harassment claims.

Title VII, 42 U.S.C. § 2000e-2, and G.L. c. 151B, § 4(16A), prohibit discrimination based on sex and sexual harassment in employment.  Title VII provides that "[i]t shall be an unlawful employment practice for an employer…to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment because of such individual's …

sex…." 42 U.S.C. § 2000e-2. Hostile work environment sexual harassment occurs when an

employer's "conduct has the purpose or effect of unreasonably interfering with an individual's

work performance or creating an intimidating, hostile, or offensive working environment."

Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986).

To succeed on her sexual harassment claims, Searle must demonstrate: (1) that she is a

member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that

the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive

so as to alter the conditions of her employment and create an abusive work environment; (5) that

sexually objectionable conduct was both objectively and subjectively offensive, such that a

reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so;

and (6) that some basis for employer liability has been established. See O'Rourke v. City of

Providence, 235 F.3d 713, 728 (1st Cir. 2001); College-Town, Div. of Interco v. MCAD, 400

Mass. 156, 162 (1987). A hostile work environment occurs when verbal, nonverbal, or physical

conduct of a sexual nature is severe, persistent, or pervasive enough to limit a person's ability to

work. Plaza-Torres v. Rey, 376 F.Supp.2d 171, 177 (D. Puerto Rico 2005); Ramsdell v. Western

Mass. Bus Lines, Inc., 415 Mass. 673, 678 (1993). An employee who alleges sexual harassment

must show that the harasser's conduct was intentional, intimidating, or humiliating to the

plaintiff in a way which affected her performance or the conditions of her employment.

Ramsdell, 415 Mass. at 678. The Supreme Court has held that whether an environment is

sufficiently hostile or abusive is determined "by looking at all the circumstances, including the

frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998);

Harris v. Forklift Systems, Inc., 114 S. Ct. 367, 370 (1993). The courts, however, have been

unwilling to recognize a hostile work environment and violation of Title VII or G.L. c. 151B

where the alleged conduct is isolated or unspecific. See Chamberlin v. 101 Realty, Inc., 915

F.2d 777, 783 (1st Cir.1990); see Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 18 (1st Cir.

2002). "[S]imple teasing, offhand comments, and isolated incidents" are insufficient to create a

hostile work environment. Faragher, 524 U.S. at 778; Kosereis v. Rhode Island, 331 F.3d 207,

216 (1st Cir. 2003). Courts must use "[c]ommon sense, and an appropriate sensitivity to social

context," to distinguish between innocuous behavior and severely hostile or abusive conduct.

Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 82 (1998).

The Supreme Court standard for employer liability for actions by a supervisor in a

harassment case is set out in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998). If

harassment by a supervisor with immediate or higher authority over an employee results in a

tangible employment action against the employee, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a significant

change in benefits, then the employer is vicariously liable; if the harassment does not result in a

tangible employment action, but is sufficiently severe and pervasive, then the employer is still

vicariously liable, but an affirmative defense is available. Id. at 752. When no tangible

employment action is taken, the defending employer may raise an affirmative defense to liability

if: (a) the employer exercised reasonable care to prevent and correct promptly any sexually

harassing behavior, and (b) the plaintiff unreasonably failed to take advantage of preventive or

corrective opportunities provided by the employer or to avoid the harm otherwise. Id. at 765; see

also Modern Continental/Obayashi v. MCAD, 445 Mass. 96, 110-111 (2005). Evidence of

reasonable care includes having a sexual harassment policy in place, following the policy in practice, and showing that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities to end the harassment.  See Ellerth, 524 U.S. at 765.

       To begin with, the substance of the comments allegedly made by Streeter regarding Searle's appearance, even if proven, do not rise to the level that is necessary to form the basis of a sexual harassment claim as they were isolated incidents which were neither severe nor pervasive within the meaning of the law.  See Faragher, 524 U.S. at 778.  As for Streeter's alleged use of the word "sluts", Searle conceded that Streeter never directed such comments at her and that to the extent she contends he directed them at others, the Town had no knowledge of it as she never complained to any Town officials about it.  Searle Deposition at 204-05. Moreover, Searle acknowledged that the language that was used in the Department by and among employees, including herself and the other women in the Department, included profanity and other offensive language.  Id. at 211-14.   She testified that this occurred on an almost daily basis and that she herself even forced another female dispatcher to swear on an occasion.  Id. Such facts preclude a finding that any use of the word "sluts" by Streeter, within the context of a work environment in which Searle herself freely uttered profanities on a daily basis, would have created an abusive work environment from either a subjective or objective point of view, as Searle is required to establish.  See O'Rourke, 235 F.3d at 728; College-Town, 400 Mass. at 162. Simply stated, the comments she has attributed to Streeter are insufficient as a matter of law to establish a hostile work environment claim based on same. See  Faragher, 524 U.S. at 778; Harris, 114 S. Ct. at 370.   Since Streeter's own actions do not rise to the requisite level, and since he cannot be held personally liable for Simmons' conduct, Searle's sexual harassment claims against Streeter in his individual capacity must be dismissed.

Moreover, even if Streeter's conduct could form the basis of a sexual harassment claim, in the absence of any evidence that Searle complained to any Town officials about Streeter's alleged conduct toward her or that the Town should have been aware of it, the Town cannot be held liable for any alleged harassment by Streeter under Title VII. See id., 398 F.3d at 95.

As for the alleged conduct of Simmons, the record does not reflect that Simmons had any power to hire, fire, demote, promote, transfer or discipline Searle (SOF ¶¶6-7) and therefore, he cannot be said to have been Searle's supervisor within the meaning of Title VII or M.G.L. c. 151B. Ellerth, 524 U.S. at 752. As such, the Town can only be held liable for Simmons' conduct if Searle demonstrates that the Town was negligent because it knew or should have known of the harassment, yet failed to take prompt action to stop it. Noviello v. City of Boston, 398 F.3d 76, 97 (1st Cir. 2005).

At her deposition, Searle admitted that she never advised Streeter or any Town officials that Simmons was referring to her as a "slut", had attempted to place his hand down her shirt, had invited her to sit on his lap or that he had exposed himself to her nor did she file any Union grievances with the Town concerning the matter. SOF ¶56; Searle Deposition at 227-38. Searle's failure to file a complaint with the Town or Streeter regarding Simmons' actions came despite the fact that she had received a copy of the Department's sexual harassment policy and had attended the Department-wide professional behavior training session that was given by the Town in February 2001. ¶¶37-39; see Searle Deposition at 114. Since Simmons was not her supervisor and since the record does not reflect that Searle either notified the Town of Simmons'

conduct[5] or that the Town should have been aware of it, the Town cannot be held liable for Simmons' conduct under either Title VII or M.G.L. c., 151B.  See Noviello, 398 F.3d at 95-98.

Finally, by Searle's own account her work performance never suffered as a result of any of the alleged harassment against her.  More specifically, Searle testified at her deposition that she was a "very good" dispatcher, that her work performance and that of the other females exceeded that of the male employees who worked in dispatch and that her performance remained at this level right up until the last day that she physically worked at the Department.  Searle Deposition at 194-96.  All told, Searle is unable to demonstrate, as she must, that the alleged harassment was sufficiently severe or pervasive enough so as to alter her work performance and the conditions of her employment.  See O'Rourke, 235 F.3d at 728; College-Town, 400 Mass. at 162.

M.    Searle Has Failed To State A Claim For Relief Under §1983 (Count V).

A claim under section 1983 has two essential elements.  First, the challenged conduct must be attributable to a person acting under color of state law and second, the conduct must have worked a denial of rights secured by the Constitution or by federal law.   Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997) cert. denied, 522 U.S. 819 (1997) citing Martinez v. Colon, 54 F.3d 980, 984 (1st Cir.) cert. denied, 516 U.S. 987 (1995).  Under the second element, a plaintiff is required to prove not only a deprivation of a right, but also that the defendant's conduct was a cause in fact of the alleged deprivation.  Id. at 1062 citing Maldonado Santiago v. Velazquez Garcia, 821 F.2d 822, 831 (1st Cir.1987).  It is well-established that a suit brought against municipal officials in their official capacities is tantamount to a claim against the municipality.

---

[5] Not surprisingly, Searle has not identified any witnesses to the alleged incidents involving Simmons.  She also never made any mention in her original MCAD filing to women in the Department being referred to as "sluts", to Simmons' supposed attempts to place his hand down her shirt or to Simmons' alleged request to her to sit on his lap. See Exhibit E.  As for the allegation that Simmons had exposed himself to her, such allegation did not surface for the first time until she served the Town with her supplemental answers to interrogatories on or about June 13, 2005. Compare Complaint with Exhibit K.

Canney v. City of Chelsea, 925 F.Supp. 58, 69 (D. Mass. 1996) citing Kentucky v. Graham, 473 U.S. 159, 166 (1985).

                    1.       Searle has failed to allege that the Town maintained any policy or custom which worked a deprivation of her constitutional or federal rights.

In an action pursuant to § 1983, there can be no municipal liability under a respondeat superior theory. Fabiano v. Hopkins, 352 F.3d 447, 452 (1st Cir. 2003) citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-95 (1978). Rather, to establish liability against a municipality, a plaintiff must prove deprivation of a constitutional right by means of "the execution of the government's policy or custom." Id. citing City of Canton v. Harris, 489 U.S. 378, 385 (1989). Plaintiff has failed to identify any policy or custom of the Town that worked a deprivation of her constitutional rights or of her rights under federal law. As such, her §1983 claim against the Town must be dismissed. See Monell, 436 U.S. at 690-95.

                    2.       Searle has failed to establish that any conduct on the part of Streeter worked a deprivation of her constitutional or federal rights.

Searle alleges that Streeter violated 42 U.S.C. §1983 by infringing upon the following asserted rights: right to be free from sexual harassment, right of equal protection, right to be free from retaliation, right to fair disciplinary proceedings, right to be free from intimidation, right of privacy, due process rights, right to be safe in the workplace, right to a fair hearing and right to be left alone. Complaint at ¶87. Searle does not identify in her Complaint the legal source of any of these rights and Defendants are unaware of the constitutional provisions or federal laws that establish the majority of these purported "rights". To the extent that any basis for any of these rights does exist under the constitution or under federal law, Searle, for the reasons argued in the preceding sections of this memorandum and incorporated herein by reference, has failed to demonstrate that she suffered a deprivation of any of those rights or that Streeter's conduct was a

cause in fact of same.  In the absence of such a showing, her §1983 claim against Streeter must be dismissed.  Flores, 103 F.3d at 1062.

      N.     Streeter Is Qualifiedly Immune From Searle's §1983 And Tort Claims.

It is well-established that government officials are qualifiedly immune from personal liability for actions taken while performing discretionary functions.  Lynch v. City of Boston, 180 F.3d 1, 13 (1st Cir. 1999).  They "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Id. quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order for a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right in light of pre-existing law.[6]  Id. citing Anderson v. Creighton, 483 U.S. 635, 640 (1987).  The burden is on the plaintiff to plead sufficient facts to establish that a specific, not a general, right was clearly established at the time of the challenged conduct and that the challenged conduct violated that right.  Souza v. Pina, 53 F.3d 423, 425 (1st Cir. 1995).  Although typically applied to civil rights claims, courts have held that the doctrine of qualified immunity also shields public officials from liability for intentional torts and other claims.  See, e.g., Lynch v. City of Boston, 989 F.Supp. 275, 286 (D. Mass. 1997) (Keeton, D.J.) citing Restatement (Second) of Torts § 895D(3) (1977); cf. Duarte v. Healy, 405 Mass. 43, 49-51 (1989) (applying common law qualified immunity to statutory claim for violation of state Privacy Act).

In order to defeat the assertion of qualified immunity, Searle bears the heavy burden of showing that Streeter violated clearly established law and that a reasonable official would have understood that what Streeter did violated that right.  See Anderson, 483 U.S. at 638; Davis v.

---

[6] In applying this wholly objective standard, the Supreme Court has emphasized that "qualified immunity questions should be resolved at the earliest possible stage of a litigation."  Anderson, 483 U.S. at 646 n.6 quoting Harlow, 457 U.S. at 817

Scherer, 468 U.S. 183, 197 (1984).  Under the facts of this case, the conduct that Searle has

based her claims against Streeter on all flow from personnel and disciplinary decisions that were

all discretionary in nature, i.e. the eligibility criteria for working details, the Department's dress

code, rates of pay for non-bargaining unit members, discipline of employees and his termination

recommendation.[7]  See Scherer, 468 U.S. at 196 n. 14.  In the absence of a showing by Searle

that Streeter's actions violated a specific right which was clearly established at the time of the

challenged conduct, Streeter is qualifiedly immune from the claims that Searle has asserted

against him individually.  See Souza, 53 F.3d at 425.

IV.    CONCLUSION

Based on the foregoing, Defendants respectfully request that an entry of judgment as to

all counts of the Complaint in this matter be made in their favor.

DEFENDANTS,

TOWN OF SALISBURY, SALISBURY POLICE
DEPARTMENT AND LAWRENCE STREETER,

By their attorneys,

/s/ David C. Jenkins

/s/ Joseph S. Fair
David C. Jenkins (BBO# 251000)
Joseph S. Fair (BBO#637818)
Kopelman and Paige, P.C.
 Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110
Dated:  July 28, 2006                                    (617) 556-0007

278034v.2/60700/0143

---

[7] The termination decision was rendered by the Town Manager, not Streeter.  See Exhibit H.