UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 2004CV10791RCL

| | |
|---|---|
| SUSAN SEARLE<br>    Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| TOWN OF SALISBURY,<br>SALISBURY POLICE<br>DEPARTMENT and<br>LAWRENCE STREETER<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF SUSAN SEARLE'S SUPPLEMENTAL ANSWER TO INTERROGATORY NOS. 1 and 12

1. The Plaintiff Susan Searle **OBJECTS** to each request to the extent that each request calls for information protected by the attorney/client privilege, work product doctrine, trial preparation materials or other materials protected by Mass.R.Civ.P. 26(b).

2. The Plaintiff Susan Searle **OBJECTS** to each interrogatory to the extent that it exceeds the scope of permissible discovery.

3. The Susan Searle **OBJECTS** to the Interrogatories to the extent that they impose a discovery obligation beyond that required by Mass.R.Civ.P. 26(b).

4. All objections as to relevance, authenticity or admissibility regarding the information herein are expressly reserved.

5. These responses are based on the present recollection and knowledge and belief of Susan Searle and represent information ascertainable by Susan Searle after diligent inquiry as of the date hereof and should not be construed to reflect all facts or documents that may be responsive to the interrogatories. Susan Searle reserves the right to supplement and/or amend its responses if further information becomes available in the course of its diligent inquiries, through discovery, or otherwise. However, Susan Searle is not obligated to supplement and/or amend its responses except as required to do so by the applicable rules of Court. These responses should not be construed as, and do not constitute, a waiver of Susan Searle right to prove additional facts at trial.

6. By responding to any interrogatory, Susan Searle is not conceding to any purported assumptions contained in any of the interrogatories and reserves its right to object to purported facts and assumptions contained therein, nor should such responses be

construed as an acknowledgment of any legal obligations which may be implied in the interrogatories.

## INTERROGATORIES

### Interrogatory No. 1

Please state your full name, residential address and name and address of your current employer.

### Answer to Interrogatory No. 1

Susan M. Searle
9 Prospect Street
Merrimac, MA  01860

I am now employed by Secure Mortgage Corporation with a corporate address located in Milford, Massachusetts. I work out of an office located at 191 Merrimack Street, Haverhill, MA.

### Interrogatory No. 12

Please state each and every fact upon which you base the allegation contained in the Complaint that the defendant Town of Raynham [sic] discriminated against the plaintiff on the basis of her sex and sexual orientation.

### Answer to Interrogatory No. 12

**Objection:** This Interrogatory is nonsensical as written. The Town of Raynham is in no way involved in the matter at bar. Notwithstanding said objection and General Objections, and without waiving same, and assuming that the term "City of Salisbury" replaced "Town of Raynham," Plaintiff responds as follows:

_____
Paul J. Klehm

**Response:** Throughout my tenure, I observed that the Salisbury Police Department required female dispatchers meet a higher standard of work performance than male dispatchers and male police officers. Chief Streeter routinely degraded, belittled and insulted the female dispatchers, including, myself. Streeter often referred to women as "sluts," despite our protests.

From late 1999 or early 2000 through May 2001, I was subjected to various demeaning and insulting comments from Chief Streeter, often in the presence of co-workers. He made demeaning comments about my looks and said other insults to me. In

2

April or May, 2001, he told me that if my buttocks were any larger, he would need to purchase another dispatch chair. On numerous occasions, I objected to his harassing comments, but Streeter did not discontinue the practice.

The Salisbury Police Department required females to adhere to waiting periods for pay raises, while males did not have to endure such waiting periods. The Salisbury Police Department hired new male dispatchers at the same rates of pay that the full time dispatchers received, without the new male dispatchers having to begin their employment at the lower rate at which the women dispatchers had been hired. The Salisbury Police Department afforded male dispatchers preference for open shifts ahead of full-time female dispatchers. As a result, the Salisbury Police Department paid female dispatchers, including, without limitation, Searle, less money and fewer benefits for equal work. On several occasions, I told Streeter that I objected to this practice of unequal pay and benefits, but Streeter did not discontinue the practice.

During the course of my employment, I repeatedly requested that Chief Streeter place me on traffic and construction details. Chief Streeter responded, "to forget about it" and "not gonna happen" or in another instance "no woman in my department would ever do a detail, so shut up and get back to your job". I was never provided with grounds on which Chief Streeter denied my requests for construction or traffic details. Since I was not permitted to perform construction details, I lost out on additional pay.

In 2000, after the hiring of additional male special officers, all of whom Streeter permitted to perform construction details, I again approached Streeter about performing construction details. Streeter informed me that I would have to attend the intermittent academy in order to be able to perform construction details. Even so, he refused to sponsor me to attend intermittent academy. He told me, in words or substance, "to stick to desk duty and that there must be something to fax".

In or around 1999, I grew concerned about the apparent shift away from quality police work to selfish concern about the amount each officer could earn in overtime and regular pay each year. I noted that the level of respect shown by male officers to the female dispatchers was deteriorating on a daily basis. This derogatory attitude hampered the other female dispatchers and me in the completion of our duties. In an effort to resolve the lack of professional communication between the officers and dispatchers I spoke to Chief Streeter about my concerns. Chief Streeter responded that I should not waste my time making suggestions or stating opinions. In one particular email, Chief Streeter stated to me, in essence, that my concerns and opinions are worthless.

In or around 2000, a full-time dispatcher at the Salisbury Police Department suffered injuries in a car accident, and was unable to work. In violation of the terms of the union contract, without affording proper notice or otherwise taking into account the current dispatchers, Chief Streeter altered the dispatch schedule in order to add two part-time male special officers as dispatchers, thereby eliminating opportunities for the female dispatchers to work overtime. At the same time, the two male special officers accumulated numerous overtime hours through a combination of dispatch shifts,

construction details and patrol shifts. When I confronted Chief Streeter about the unfair situation, he said, in words or substance, "be glad that you still have a full time schedule."

From approximately 2000 through July, 2001, including on or after April, 2001, Salisbury Police Department Inspector Richard Simmons, a close friend of Chief Streeter and the current interim Chief of the Salisbury Police Department, engaged in a pattern of sexual harassment, a pattern which included, among other things, physical humiliation, offensive utterances, and other wrongful conduct which unreasonably interfered with my work performance. The instances of distasteful and inappropriate conduct increased in 2001.

On numerous occasions, including on or after April, 2001, Simmons attempted to place his hand down the front of my uniform while I was sitting at my work station. I moved Simmons' hand away. I always verbally protested this detestable conduct to both Simmons and Chief Streeter. On several occasions, including, without limitation, on or after April, 2001, Simmons would relieve me of my duties at the dispatcher console while I took a break, and, upon my return from my break, he would remain seated and would plead with me to sit on his lap. I always verbally protested this detestable conduct to both Simmons and Chief Streeter. I felt humiliated, embarrassed and ashamed by Simmons' wrongful conduct. Upon information and belief, at no time did the Salisbury Police Department take any steps to reprimand Simmons.

In June, 2001, I was acting as union representative for the dispatchers. Chief Streeter inquired why I was bothering to proceed with contract negotiations on behalf of the dispatchers because, according to Chief Streeter, there would be nothing left for "you girls" - referring to female dispatchers. He then laughed and told me that I was wasting my time, and then labeled my issues and requisitions "trivial".

### Supplemental Answer to Interrogatory No. 12

In or around March, 2001, Simmons stood behind my chair and suddenly exposed his genitals to me in the dispatch area of the Salisbury Police Department when no one else was present. I was shocked by his conduct.

Signed under the pains and penalties of perjury this 13th day of June, 2005.

_____
Susan Searle

4

AS TO ALL OBJECTIONS:

_____
Paul J. Klehm (BBO#561605)
LAW OFFICES OF JAMES B. KRASNOO
23 Main Street, Terrace Level
Andover, MA 01810
(978) 475-9955

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by mail/hand and facsimile on June 17, 2005.

_____
Paul J. Klehm

5