UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

SUSAN SEARLE                                )
     Plaintiff                          )
                                       )
v.                                          )
                                       )    Civil Action No. 04-CV-10791-RCL
                                       )
TOWN OF SALISBURY and                       )
LAWRENCE STREETER                           )
     Defendants.                        )
_____)

## JOINT PRE-TRIAL MEMORANDUM

Plaintiff Susan Searle and Defendants Town of Salisbury and Lawrence Streeter, by and

through their respective counsel, hereby submit their Joint Pre-Trial Memorandum pursuant to

the Order for Pre-Trial Conference dated February 13, 2007 [Doc. No. 54].

**A.**     **Names, addresses and telephone numbers of trial counsel**

Plaintiff's counsel

       Paul J. Klehm, Esq.
       James B. Krasnoo, Esq.
       Krasnoo|Klehm LLP
       23 Main Street, Suite Six
       Andover, MA  01810
       (978) 475-9955

Defendants' counsel

       David C. Jenkins, Esq.
       Joseph S. Fair, Esq.
       Kopelman & Paige, P.C.
       101 Arch Street
       Boston, MA  02110-1109
       (617) 556-0007

**B.**     **Concise Summary With Respect to Liability and Damages**

**1.  Plaintiff's Concise Summary**

In the within action, Susan Searle, a former dispatcher for the Salisbury (Mass.) police department, seeks damages and other relief from the Defendants arising out of the severe gender discrimination to which she was subjected in the workplace arising out of the exclusion of Ms. Searle from handling paid traffic/construction detail work on behalf of the Town of Salisbury because she is a woman.  She also asserts retaliation claims against the Defendants.

From 1994 through 1996, and then from 1998 through her wrongful termination in January, 2002, Susan Searle worked as a full-time dispatcher, sworn special officer and matron for the Salisbury Police Department. Throughout her tenure, Searle repeatedly asked Chief Streeter to permit her to handle lucrative, paid traffic/construction details for the Town of Salisbury, but Streeter refused to do so (sometimes in a rude manner).  At one point, Streeter informed Searle that she needed to attend the intermittent academy in order to handle such details, but Streeter refused to send Searle to the intermittent academy – even after Searle submitted an application for same.  Streeter unilaterally prevented Searle from completing all of the purported requirements in order to perform details, because she is a woman.  Former Sgt. Edward Foote, a 31 year veteran who retired in 2002, testified at his deposition that Searle was persistent in her efforts to handle details.

Chief Streeter ended the practice of permitting females to perform details when he became Chief of the Town of Salisbury Police in 1989.  No female special officers for the Town of Salisbury served any details within the Town from 1994 to 2001 (a female police officer from

another town did handle one detail on one occasion.)  According to Sgt. Foote, Streeter told Foote

that "[n]o women would ever work a detail."

The male police department employees earned approximately $30.00 per hour for detail

work, with a four hour minimum, at a time when Ms. Searle was paid far less per hour of work.

Male reserve and summer special police officers handled details, in addition to male police

officers.  Even male dispatchers handled detail work.  Female dispatchers, including, without

limitation, Searle, were denied the opportunity to earn higher incomes.  It is telling that, from

1994 to 2001, the Salisbury Police Department did not have a single female police officer.  It is

even more telling that, at one point, Chief Streeter wrote an email to Ms. Searle which read, in

part, as follows:  "Thanks Susan, but your opinion really isn't valued here.  Thanks for trying

however."   Streeter often referred to women as "sluts" in the workplace.

### The Wrongful Termination

In or around July, 2001, two officers filed allegedly false complaints against Searle,

allegedly in an effort to retaliate against Searle for seeking to end the discrimination against

women in the workplace.  Shortly thereafter, Ms. Searle was told to stay home from work for

several days.  Chief Streeter later produced a three ring binder containing hundreds of pages of

fabricated incidents in an effort to discriminate against, and to retaliate against, Searle.

On or about August 1, 2001, Chief Streeter placed Ms. Searle on administrative leave.  In

a letter dated August 2, 2001, Chief Streeter wrote that "continued performance issues, of the

same, like or similar nature, as has been articulated herein, will lead to probable suspension and

potential/possible employment termination."  Then, without Ms. Searle working another shift at

the police station and, therefore, without the possibility of Ms. Searle having any further

performance issues, the Salisbury Police Department wrongfully discharged Ms. Searle on

January 31, 2002 all in retaliation for her efforts to seek equality for women in the workplace.

Sgt. Foote believes that Chief Streeter had a "personal vendetta" against Ms. Searle because of,

among other things, Ms. Searle's wish to perform details.  (Foote Depo., at 64).

At some point after Ms. Searle was placed on administrative leave, Streeter and Simmons

waited outside the home of dispatcher Denise Richard, at a time when Ms. Searle was meeting

with Ms. Richard and Sgt. Foote, in an effort to intimidate Ms. Searle.  Chief Streeter also

delayed sending Ms. Searle a copy of her personnel file in violation of a state statute.

### **Damages**

#### **i.  Emotional**

Over the years, Ms. Searle fought hard to gain equal rights for women at the Salisbury

Police Department.  As a result of Defendants' wrongful conduct, Ms. Searle suffered great

emotional distress, humiliation and embarrassment.  She was insulted, demeaned and prevented

from working lucrative construction details simply because of her gender.  She lost her job.  She

was placed on an anti-depressant (Celexa) to deal with the emotional distress.  She endured

retaliation simply for trying to correct the institutional wrongs at the police station.

#### **ii. Lost wages and other damages**

Ms. Searle estimates her lost wages and other damages (exclusive of emotional distress
damages) below.  The figures set forth below are through January 1, 2006 (or, in some cases, only
through 2005).  Ms. Searle intends to seek to demonstrate lost wages through the present at trial.

a.  **Details:**     Ms. Searle estimates that she lost $76,800.00 in detail pay, which is
calculated as follows:

8 hour details x $32 per hour x 1 detail per week =  $256.00 per week.
$256 x 50 weeks =  $12,800 per year

$12,800 x 6 years  **=  $76,800.00** in lost detail pay through approximately August, 2001, when she was placed on administrative leave.

    b.  **Lost detail pay from August, 2001 through January 1, 2006:**

$12,800 per year x 4 =    $51,200.00
$12,800 per year x 5/12 = $5,333.33
          Total:    **$56,533.33**

    c.  **Lost overtime while on administrative leave:**  Ms. Searle was on administrative leave for approximately six months (August, 2001 to January, 2002), losing out on **$4,500** to $5,000 in overtime.

    d.  **Lost overtime pay from January, 2002 through January 1, 2006:**

Assuming $9,000 in overtime pay per year, Searle lost the following:
January, 2002 through January, 2006 = 4 years
9,000 x 4 =  **$36,000.00** in lost overtime pay from January, 2002 through January, 2006

    e.  **Net Lost wages, per year:**

| | | |
|---|---|---|
| 2002 | ($32,000.00-$22,710.41) | $9,289.59 |
| 2003 | ($32,000.00 -$25,212.95) | $6,787.05 |
| 2004 | ($32,000.00- $12,485.51) | $19,514.49 |
| 2005 | ($32,000.00-$9,532.26) | $22,467.74 |
| | Total: | **$58,058.87** |

    f.  **Vacation days:**

Ms. Searle lost 17 days in 2002, 18 days in 2003, 19 days in 2004 and 20 days in 2005. She therefore lost (74 days x $13.50 per hour x 8 hours per day) **$7,992.00** in vacation days.

    g.  **Longevity Pay:**

Ms. Searle lost approximately $1,150 per year, not including annual increases, over a period of at least four years.  She therefore lost ($1,150 x 4) **$4,600.00** in longevity pay.

The above damages, using conservative estimates, total **$244,484.20**.

2.    **Defendants' Concise Summary**

Paid Details

The plaintiff, Susan Searle (hereinafter, "Searle"), was hired by the Town of Salisbury (hereinafter, "Town") as a police dispatcher in its Police Department (hereinafter, "Department") in 1994, but later resigned sometime in 1996. She was later rehired as a dispatcher sometime in 1998, but was subsequently terminated from her employment effective January 31, 2002. The appointing authority for Department employees is the Town Manager who, at the time of Searle's termination, was Timothy P. McInerney.

The Department was overseen by the Chief of Police and employed full-time police officers, reserve and seasonal police officers, as well as police dispatchers. The term "special police officer" was a generic term that was used to refer to a variety of positions in the Department including seasonal police officers, dispatchers, matrons and traffic/meter enforcers. This was somewhat of a misnomer, however, as among this group only the seasonal officers were trained and certified as true "police officers," as that term is commonly understood, and only seasonal officers were police academy trained and possessed the legal authority to make arrests.

Successful completion of the full-time or part-time intermittent Police Academy was one of the requirements to become a reserve, full-time or seasonal police officer with the Town. Reserve and seasonal officers possessed the same powers of arrest as full-time police officers. Reserve and seasonal officers were utilized by the Department on an as needed basis to backfill full-time officer patrol shift vacancies and to fill paid traffic and construction details that could not be filled by the Department using full-time officers. When filling full-time officer patrol shift vacancies, reserve officers and seasonal officers were responsible for the same duties that the full-

time officers were responsible for including, but not limited to, patrolling the community, responding to emergency calls for assistance, making arrests when necessary and, in general, maintaining the public safety and enforcing the laws of the Commonwealth. When working paid details, reserve and seasonal officers were responsible, like full-time officers, for monitoring traffic control, maintaining the public safety, enforcing the law and, if necessary, making arrests and responding to emergencies that may arise at the site of the detail or throughout the community, if needed. In order to work paid details for the Department during Streeter's tenure as Chief, the individual had to have successfully graduated from the police academy and be a full-time, reserve or seasonal police officer with full police powers.

On two (2) occasions, Searle asked Streeter if she could work paid details. In response, Streeter advised her that if she wanted to perform details, she needed to fill out an application to become a reserve police officer with the Department and go through the hiring process. Searle did not possess any police academy training and did not have any police powers. At no time during her tenure did Searle ever submit an application to become a reserve police officer. The reason she did not do so was because she had no interest in becoming an actual police officer and working the police patrols that would have accompanied same. She merely wanted to cherry pick the more financially lucrative aspect of the job, i.e. paid details.

<u>Termination</u>

The duties of a dispatcher included accepting initial communications into the Department whether they were received in person, in writing or over the telephone. After receiving the initial communication, dispatchers were responsible for identifying and extracting the critical information and generating a report in the Department's computer system summarizing the

matter.  That report was then forwarded to the appropriate police personnel for action.  If the

matter being reported was of a non-emergency nature, but nonetheless required immediate

attention in the dispatcher's judgment, the dispatcher was responsible for radioing a police officer

to come to the station to pick up the report and handle it.  If the matter being reported was an

emergency, the dispatcher was to radio an officer and dispatch that officer to the location of the

emergency.  After dispatching an officer, the dispatcher was required to keep that officer

apprised of all facts relevant to the officer's safety and the officer's response to the call.  In

addition, dispatchers were responsible for performing computer searches in various police related

databases.  They were also required to maintain a log of the calls that they received which

included all information that was pertinent to the call and the action that was taken with respect

to same.  In essence, dispatchers served as the critical communication link between the public and

police officers and between police officers and the Department.

On or about July 27, 2001, Streeter placed Searle on paid administrative leave pending the

outcome of a psychological fitness for duty evaluation after she called in sick to work and

reported that she did so because she was emotionally traumatized.  On August 1, 2001, Streeter

met with Searle to discuss with her ongoing issues regarding her work performance.  At the

meeting, Streeter presented Searle with a three-ring binder that contained copies of various

documents he had compiled regarding her performance.  The day after that meeting, Streeter

issued Searle a letter of reprimand in connection with her performance issues.

Thereafter, while Searle was still on paid administrative leave and the results of the

psychological exam were still pending, Streeter sent Searle a memorandum in which he advised

her that it had come to his attention that, on or about July 22, 2001, she was alleged to have

initiated a 209A restraining order process for her daughter while she was on duty as a dispatcher for the Department without authorization and that an investigation into the matter would be conducted.. Streeter advised that, if substantiated, the allegation could affect her continued employment with the Town. Under the Department's rules and regulations, dispatchers are not permitted to unilaterally initiate the 209A process, but instead must receive authorization from an officer to do so. Ultimately, the investigators concluded that Searle did in fact initiate the 209A process for her daughter while on duty as a dispatcher without prior authorization. Searle does not dispute that she obtained a 209A restraining order on behalf of her daughter without receiving the express permission of a police officer.

On or about August 17, 2001, an Internal Affairs investigation substantiated an allegation of failure to assign an officer to a call that had been filed by an officer against Searle prior to her administrative leave.

On January 3, 2002, a disciplinary hearing was held by the Town Manager in connection with Searle's issuance of the 209A and performance related issues. While Streeter testified at the hearing, Searle elected not to and did not call any witnesses on her behalf. Following the hearing, the Town Manager notified Searle that her employment was terminated as a result of the 209A incident, her repeated failure to assign officers to calls and other performance issues.

Defendants intend to offer evidence at trial which will demonstrate that Plaintiff was not subjected to discriminatory or retaliatory action while employed as a dispatcher for the Town of Salisbury Police Department. Rather, Defendants intend to present evidence that will show, as discussed above, that in order to work the paid details that Plaintiff contends she was unlawfully denied she needed to first apply to be a police officer which she never did.

Defendants also expect the evidence will show that Plaintiff's work performance had deteriorated in the period leading up to her dismissal and that she engaged in serious misconduct by using her position as a dispatcher to obtain a restraining order for a family member in violation of the Department's policies and rules and regulations.  Defendants submit that the evidence will demonstrate that the Town had legitimate, non-retaliatory reasons for terminating Plaintiff's employment.

<u>Damages</u>

Defendants contend that Plaintiff failed to adequately mitigate her damages in this matter, failed to accurately report her interim earnings during discovery and has failed to produce some of her relevant tax returns and W-2 statements.

**C.    Waived Claims or Defenses**

Plaintiff will waive her claim pursuant to 42 U.S.C. §1983, but she shall proceed on all other claims, including, without limitation, her claims pursuant to Title VII and M.G.L. c. 151B. Plaintiff waives no other claims.

Defendants waive no defenses.

**D.    Statement of Facts established by pleadings, stipulations of counsel and Admissions**

1.    Plaintiff Susan Searle is a female and resides at 9 Prospect Street, Merrimac, Massachusetts.  (Complaint, ¶1).

2.    The Town of Salisbury is a municipality organized under the laws of the Commonwealth of Massachusetts.   The Salisbury Police Department is a department of the Town of Salisbury. (Complaint, ¶2).

3.    The appointing authority for Department employees is the Town Manager who, at the time of Searle's termination, was Timothy P. McInerney.  Plaintiff's Response Defendants' Statement of Facts at ¶5.

4.    Defendant Lawrence Streeter is the former Chief of the Salisbury Police Department.  As Chief of the Department, Streeter was in charge of the Department. (Complaint, ¶3).

5.    Defendant Streeter was appointed Chief of the Salisbury Police Department in 1989.  (Complaint, ¶5).

6.    At all times relevant, the Department was overseen by the Chief of Police and employed both full-time police officers and reserve and seasonal police officers, as well as police dispatchers.  Plaintiff's Response Defendants' Statement of Facts at ¶3.

7.    Successful completion of a full-time or part-time Police Academy was one of the requirements to become a full-time or part-time police officer, respectively.  Plaintiff's Response Defendants' Statement of Facts at ¶9-10

8.    OMITTED

9.    The term "special police officer" was a term that was used to refer to a variety of positions in the Department, including seasonal police officers, dispatchers, matrons and traffic/meter enforcers.  Plaintiff's Response Defendants' Statement of Facts at ¶4.

10.    OMITTED.

11.    OMITTED.

12.    In or about September, 1994, Searle began working as a full-time public safety dispatcher for the Police Department of the Town of Salisbury, Massachusetts.  (Salisbury Admissions, No. 2).

13.    Plaintiff Susan Searle was a Dispatcher for the Salisbury Police Department, (Complaint, ¶6), and she was a sworn "special officer."  (Salisbury Admissions, No. 3).

14.    All individuals that were employed by the Town as full-time police dispatchers were members of a collective bargaining unit for which the American Federation of State, County and Municipal Employees, Council 93, Local 939 ("AFSCME" or "Union") served as the exclusive bargaining agent with respect to their wages, hours and other terms and conditions of employment.  Plaintiff's Response Defendants' Statement of Facts at ¶29.

15.    The rates of pay and other terms and conditions for individuals employed by the Town as full-time police dispatchers, including Searle, were set by the terms of the CBA. Plaintiff's Response Defendants' Statement of Facts at ¶30.

16.    The duties of a dispatcher included accepting initial communications into the Department whether they were received in person, in writing or over the telephone. After receiving the initial communication, dispatchers were responsible for identifying and extracting the critical information and generating a report in the Department's computer system summarizing the matter. That report was then forwarded to the appropriate police personnel for action. If the matter being reported was of a non-emergency nature, but nonetheless required immediate attention in the dispatcher's judgment, the dispatcher was responsible for radioing a police officer to come to the station to pick up the report and handle it. If the matter being reported was an emergency, the dispatcher was to radio an officer and dispatch that officer to the location of the emergency. After dispatching an officer, the dispatcher was required to keep that officer apprised of all facts relevant to the officer's safety and the officer's response to the call. In addition, dispatchers were responsible for performing computer searches in various police related databases. They were also required to maintain a log of the calls that they received which included all information that was pertinent to the call and the action that was taken with respect to same. In essence, dispatchers served as the critical communication link between the public and police officers and between police officers and the Department. Plaintiff's Response Defendants' Statement of Facts at ¶19.

17.    In or around 1994, Searle first approached Chief Streeter regarding her wish to perform lucrative traffic/construction paid details in Salisbury, thereby affording her an opportunity to earn additional income and to have greater responsibility. Searle would have received more pay for working paid details than she would have received for working a comparable number of overtime hours as a dispatcher. (Complaint, ¶8; see Salisbury Admissions No. 5).

18.    OMITTED.

19.    OMITTED.

20.    In or around September, 1996, Searle left the Salisbury Police Department voluntarily. (Complaint, ¶7a; Salisbury Admissions, No. 4).

21.    In or around March, 1998, Searle returned to the Salisbury Police Department. (Complaint, ¶10).

22.    Beginning in December 1996, Streeter instituted a formal sexual harassment policy which he subsequently reviewed, revised and reposted in March 1998, December 1999 and in and around January 2001. Plaintiff's Response Defendants' Statement of Facts at ¶37.

23.    A copy of the policy and any subsequently revised versions were issued by the Department to all personnel, including Searle, and were posted in the main lobby of the Department. Plaintiff's Response Defendants' Statement of Facts at ¶38.

24.    A mandatory Department-wide professional behavior training that focused on various forms of potential harassment and sensitivity issues was given in approximately February 2001.  Plaintiff's Response Defendants' Statement of Facts at ¶39.

25.    On or about July 21, 2001, Searle last performed work on behalf of the Salisbury Police Department.  (Complaint, ¶39).

26.    On July 27, 2001, Searle called in sick.  (Complaint, ¶42).

27.    On July 27, 2001, Searle was placed on paid administrative leave by Chief Streeter.  (Complaint, ¶43; Plaintiff's Response Defendants' Statement of Facts at ¶46).

28.    Between July 22, 2001 and August 1, 2001, Chief Streeter added some materials to a three-ring binder which he displayed to Searle on August 1, 2001 at the Salisbury Police Department.  (Salisbury Admissions, No. 43).

29.    The three ring binder, which Chief Streeter displayed at the meeting with Ms. Searle on or about August 1, 2001 at the Salisbury Police Department, included at least one reference to an alleged incident which allegedly took place when Searle was not on duty for the Salisbury Police Department.  (Salisbury Admissions, No. 44).

30.    Streeter never sponsored Searle for attendance at an academy for an eight week safety course.  (Salisbury Admissions, No. 23).

31.    Streeter never permitted Searle to perform paid traffic/construction details.  (Salisbury Admissions, No. 15).

32.    From 1994 through January, 2002, Streeter did not permit any female employees of the Salisbury Police Department to perform paid traffic/construction details.  (Salisbury Admissions, No. 17).

33.    From 1994 through July, 2001, Chief Streeter sponsored several male employees of the Salisbury Police Department for attendance at an academy for an eight week safety course.  (Salisbury Admissions, No. 21).

34.    Chief Streeter sponsored a female employee for attendance at an academy.  (Salisbury Admissions, No. 20).

35.    On or about August 1, 2001, Searle requested a copy of her personnel file.  (Salisbury Admissions, No. 45;  see Complaint, ¶47).

36.    On or about August 1, 2001, Chief Streeter ordered Searle to visit a psychiatrist to see whether she was fit for duty.  (Salisbury Admissions, No. 46).

37.    On August 29, 2001, Searle filed an action with the Massachusetts Commission Against Discrimination.  (Complaint, ¶51).

38.    OMITTED.

39.    On November 27, 2001, the Town of Salisbury served a notice of disciplinary hearing upon Searle.  (Complaint, ¶54).

40.    OMITTED.

41.    On January 31, 2002, Searle was discharged.  (Complaint, ¶59).

42.    On or about March 31, 2004, Searle requested that her Massachusetts Commission Against Discrimination Action be withdrawn.

**E.    Contested Issues of Fact**

The parties dispute liability and damages.

**F.    Questions Raised by Pending Motions**

None, with the exception of issues raised by motions *in limine* to be filed by parties.

**G.    Issues of Law, including Evidentiary Questions**

The parties agree that the following counts of the Complaint remain  at this time:  Count I (151B) against Streeter and Town of Salisbury and Count II (Title VII) against Town of Salisbury insofar as they allege gender discrimination against Defendants in connection with Searle's efforts to be permitted to perform paid traffic/construction details and insofar as they allege retaliation claims against Defendants. Defendants assert, however, that Plaintiff's discrimination and retaliation claims against Streeter individually and her retaliation claim against the Town should not be allowed to proceed to trial as Plaintiff failed to exhaust her administrative remedies with respect to same, as is more fully detailed in Defendants' Motion In Limine To Preclude Claims For Which No Administrative Charge Was Filed that is being filed herewith.

The parties agree that Massachusetts and federal law will apply to the respective state and federal claims.  The parties dispute whether one or both Defendants are liable to Plaintiff for, among other things, damages, punitive damages, attorneys' fees, costs and interest.

Plaintiff incorporates herein by reference her Objections to Rule 26(a)(3) Pre-Trial Disclosures of Defendants Town of Salisbury and Lawrence Streeter which were served upon Defendants' counsel on

April 10, 2007 via facsimile and first class mail, postage pre-paid. (See **Exhibit A**). Plaintiff also incorporates herein by reference Plaintiff's motions *in limine*, filed separately.

Plaintiffs are filing a motion in limine seeking to preclude Defendants from introducing evidence to contradict facts admitted via answer to the Complaint and the responses to the requests for production of documents. Plaintiffs are also filing a motion to sequester non-party witnesses.

Defendants incorporate herein by reference their Objections To Plaintiff's Rule 26(a)(3) Disclosures which were served upon Plaintiff's counsel via email on April 11, 2007 and, after further consultation, amended and served via email on April 12, 2007. (See **Exhibit B**).

Plaintiff notes that there may be an issue regarding the scope of the evidence which Plaintiff may seek to introduce at trial on the issue of gender discrimination. For instance, Plaintiff may seek to introduce evidence regarding the unequal application of the dress code and regarding the unequal pay for men and women in the workplace, even though the Court excluded such claims at summary judgment. Plaintiff contends that such evidence is germane to the issue of gender discrimination. Plaintiff is submitting a motion in limine on that issue. Defendants assert that such evidence should not be admitted at trial for the reasons more fully detailed in Defendants' Motion In Limine To Preclude The Introduction Of Evidence And Testimony Concerning Plaintiff's Previously Dismissed Claims Regarding Unequal Pay And Uniforms that is being filed herewith.

Defendants also object to the late addition of Dr. William Jackson as a possible witness and to the late identification of the records of Dr. Jackson related to his treatment of Plaintiff as an expected exhibit. Plaintiff did not identify Dr. Jackson or the medical records in her Pre-Trial Disclosures nor was Dr. Jackson identified in Plaintiff's answer to interrogatory number 9 in which Defendants' requested that she identify any persons who witnessed the expenses and/or damages she allegedly suffered. Defendants submit that Dr. Jackson should be precluded from testifying or at least until after Defendants have been given an opportunity to depose him. To the extent Plaintiff has indicated that she intends to introduce certified copies of her medical records, Defendants object to their introduction to the extent that they contain any information or statements that are outside the scope of Fed.R.Evid. 803(4), as such information would constitute inadmissible hearsay under Fed.R.Evid. 801 and 802.

**H.    Requested Amendments to Pleadings**

None.

**I.    Additional Matters to Aid in Disposition**

None.

**J.    Probable Length of Trial**

Six to eight days (9:00 a.m. to 1:00 p.m., with 25 minute break at approximately 11:00 a.m.).

**K.    Witnesses**

**Plaintiff intends to call the following witnesses, all of whom are factual witnesses:**

1.    Susan Searle
      9 Prospect Street
      Merrimack, MA
      (978) 346-7295

2.    Lawrence Streeter
      31 True Road
      Salisbury, MA  01952

3.    Denise Richard
      465 Northend Boulevard
      Salisbury, MA
      (978) 465-3007

4.    Edward Foote
      37 Orchard Street
      Merrimac, MA
      (978) 462-9709

5.    Lori Napoli
      60 Kendall Street
      Unit #2
      Lawrence, MA
      (978) 688-1905 or (800) 734-0878

6.    Richard Simmons
      C/o Salisbury Police Department
      24 Railroad Avenue
      Salisbury, MA
      (978) 465-3121

**Plaintiff may call the following witnesses, if the need arises, all of whom are factual witnesses:**

7.      Timothy McInerney, former Town Manager

8.      Robert Searle
        9 Prospect Street
        Merrimack, MA
        (978) 346-7295

9.      Danielle Beaulieu
        60 Kendall Street
        Lawrence, MA   01841

10.     Meghan Searle
        5 Lonvale Lane, Apt. 125
        Amesbury, MA  01913

11.     Keeper of Records
        Salisbury Police Department
        Salisbury, MA  01952

12.     Jason Kohan
        C/o Newburyport Police Department
        4 Green Street Newburyport, MA 01950
        (978) 462-4411

13.     Tony King
        C/o Salisbury Police Department
        24 Railroad Ave. Salisbury, MA
        (978) 465-3121

14.     John Delorey
        C/o Salisbury Police Department
        24 Railroad Ave. Salisbury, MA
        (978) 465-3121

15.     John Bianchi
        16 Birch Road
        Wenham, MA 01984

16.     Denis Champagne, Jr.
        C/o Amesbury Police Department
        19 School Street, Amesbury, MA 01913
        (978) 388-1217

17.   James Leavitt
      C/o Salisbury Police Department
      24 Railroad Ave. Salisbury, MA
      (978) 465-3121

18.   Kristine Harrison
      C/o Salisbury Police Department
      24 Railroad Ave. Salisbury, MA
      (978) 465-3121

19.   Donna Powierza
      Salisbury Police Department
      24 Railroad Ave. Salisbury, MA
      (978) 465-3121

20.   Ann Jones
      1 True Road
      Salisbury, MA 01952

21.   Mary Dow
      P.O. Box 129
      Searsport, ME 04972
      (207) 342-5360

22.   Robin Dow
      P.O. Box 129
      Searsport, ME 04972
      (207) 342-5360

23.   Kristen Kozacka
      6 Madison Ave
      Amesbury, MA 01913
      (978) 363-1227

24.   Ryan Searle
      9 Prospect Street
      Merrimack, MA

25.   Pamela Lutes
      10 Bartlett Street
      Salisbury, MA
      (978) 465-2727

26.    Michael Alder
       C/o Salisbury Police Department
       24 Railroad Ave. Salisbury, MA
       (978) 465-3121

27.    Judith MacLean
       438 Barefoot Blvd
       Barefoot Bay, FL 32976
       (561) 664-4653

28.    Kevin Pike
       C/o Salisbury Police Department
       24 Railroad Ave. Salisbury, MA
       (978) 465-3121

29.    James Breslin
       AFSCME

30.    Wayne Soini, Esq.
       Sheriff
       40 Thorndike Street
       Cambridge, MA

31.    Scott Gleason, Esq.
       163 Merrimack Street
       Haverhill, MA  01830

32.    Dorothy Tobin
       Police Officer, Town of Rowley

33.    Eugene Scione
       C/o Salisbury Police Department
       24 Railroad Ave. Salisbury, MA
       (978) 465-3121

34.    Kevin Sullivan
       C/o Salisbury Police Department
       24 Railroad Ave. Salisbury, MA
       (978) 465-3121

35.   Jennifer Skelton Poulin
      Amesbury, MA

36.   William Packer
      C/o Salisbury Police Department
      24 Railroad Ave. Salisbury, MA
      (978) 465-3121

37.   Robert Roy
      C/o Salisbury Police Department
      24 Railroad Ave. Salisbury, MA
      (978) 465-3121

38.   Richard Merrill, Jr.
      C/o Salisbury Police Department
      24 Railroad Ave. Salisbury, MA
      (978) 465-3121

39.   Margaret M. Grelle
      4 James Street
      Methuen, MA  01844

40.   Joseph T. Grelle
      4 James Street
      Methuen, MA  01844

41.   Any and all witnesses listed on any defendant's Pretrial Disclosures.

42.   Any and all witnesses who are necessary to lay a proper foundation for the
      admission of any document or tangible thing listed in these Pretrial Disclosures.

43.   Any and all witnesses necessary for rebuttal or impeachment of any witness
      called by any defendant.

44.   *William Jackson, M.D.*
      *46 Toll Road, Unit B*
      *Salisbury, MA  01952*

Plaintiff reserves her right to supplement this list of witnesses up to and including the

time of trial with reasonable notice to counsel, and reserves the right to call any witnesses.

20

**Defendants intend to call the following witnesses, all of whom are factual witnesses:**

1.    Chief Lawrence Streeter
      Newton Police Department
      2 Amesbury Road
      Newton, NH 03858

2.    Richard Simmons
      Salisbury Police Department
      24 Railroad Avenue
      Salisbury, MA 01952

3.    Timothy McInerney
      Former Town Manager

4.    Kristine Harrison
      Salisbury Police Department
      24 Railroad Avenue
      Salisbury, MA 01952

5.    Sergeant Robert Roy
      Salisbury Police Department
      24 Railroad Avenue
      Salisbury, MA 01952

6.    Sergeant William Packer
      Salisbury Police Department
      24 Railroad Avenue
      Salisbury, MA 01952

7.    Ann Champaign
      Salisbury Police Department
      24 Railroad Avenue
      Salisbury, MA 01952

Defendants reserve their right to supplement this list with reasonable notice to counsel.

**Defendants may call the following witnesses, if the need arises, all of whom are factual witnesses:**

1.      Any witnesses called by the plaintiff during her case-in-chief, including the

plaintiff.

2.      The defendants may also call witnesses, other than those listed above, to

rebut testimony offered by plaintiff.

3.      Any witnesses identified in any of Plaintiff's pretrial disclosures.

Defendants reserve their right to supplement this list with reasonable notice to counsel.

## L.    Proposed Exhibit List

**AGREED UPON EXHIBITS**

| | |
|---|---|
| 1 (P1.) | Susan Searle's Personnel File  (The parties reserve their rights to both introduce and raise objections to individual documents contained therein.) |
| 2 (P2.) | January 30, 2002, Memo from Salisbury Town Manager to Susan Searle, (pp.. 450-451) |
| 3 (P10.) | August 2, 2001, Reprimand from Chief Streeter to Susan Searle, (pp. 475-477) |
| 4 (P11.) | February 2, 2001, Memo from Chief Streeter to Susan Searle, (pp.478) |
| 5 (P13.) | March 29, 2000, Memo from Chief Streeter to Susan Searle, (pp. 480) |
| 6 (P15.) | November 27, 2001, Letter from Timothy McInerney to Susan Searle, (pp. 489 – 494) |
| 7 (P17.) | Response of the Defendant Town of Salisbury to Plaintiff's Requests for Admissions |
| 8. (P18.) | Searle's income tax returns *and W-2s for 2000 through present* |
| 9 (P20.) | Public Safety Dispatcher/Clerk Duties and Responsibilities Policy |
| 10 (P22.) | "Discipline History" of Susan Searle (2 or more versions) |
| 11 (P25.) | Officer Detail History (11/2/04) |
| 12 (P26.) | Letter from Streeter to Searle dated August 17, 2001 |
| 13 (P27.) | Letter from Streeter to McInerney dated September 17, 2001 |
| 14 (P30.) | Memorandum dated January 30, 2002 from Town Manager to Susan Searle |
| 15. (P32) | Sexual harassment policy of Town of Salisbury |
| 16. (P33) | Three ring binder with Searle's "discipline history"  (The parties reserve their rights to both introduce and raise objections to individual documents contained therein.) |
| 17 (P34.) | Policies and Procedures Manual for Salisbury Police Department |
| 18 (P35a.) | Sworn Officer and Dispatcher Hiring Policy |
| 19 (P35b.) | Special Intermittent Officers document |
| 20 (P48.) | Contract between the Town of Salisbury and Salisbury Police effective July 1, 1999 through June 30, 2002 |

| | |
|---|---|
| 21 (P53.) | Public Safety Dispatcher/Clerk |
| 22 (D15.) | August 8, 2001 memorandum from Chief Streeter to Susan Searle |
| 23 (D19.) | "Dispatcher" job description |
| 24 (D20.) | "Patrol Officer" job description |

**Plaintiff may introduce the following exhibits, without objection:**

| | |
|---|---|
| 25 (P49.) | Town of Salisbury Employee's Handbook (Adopted May 15, 1995) |
| 26 (P68.) | Documents produced by Town of Salisbury via letter dated April 14, 2006 from Attorney Fair to Attorney Klehm relating to duties of various employees of Town of Salisbury Police Department |
| 27 (P70.) | Affidavit of Streeter |
| 28 (P73.) | Any and all deposition transcripts to the extent admissible under the Rules of Evidence. |

**PLAINTIFF'S PROPOSED EXHIBITS OBJECTED TO BY DEFENDANTS**

| | |
|---|---|
| 1 (P3.) | October 9, 2001, Letter from Sandra M. Charton to Jeannine Rice, (pp. 452-464) |
| 2 (P4.) | July 25, 2001, Letter from Susan Searle to Chief Streeter, (pp. 465-467) |
| 3 (P5.) | July 25, 2001, Letter from Susan Searle to Chief Streeter, (redacted) (pp. 468-470) |
| 4 (P6.) | April 3, 2001, Letter from Susan Searle to Jim Breslin, (pp. 471) |
| 5 (P7.) | March 8, 2002, Letter from Susan Searle to Timothy McInerney, (pp. 472) |
| 6 (P8.) | August 29, 2001, Letter from Jeannine Rice to Susan Searle, (pp. 473) |
| 7 (P9.) | August 29, 2001, Letter from Jeannine Rice to Lawrence Streeter, (pp. 474) |
| 8 (P12.) | June 20, 2000, Memo from Mark Thomas to Susan Searle (pp. 479) |
| 9 (P14.) | August 4, 1999, Memo from Chief Streeter to Susan Searle, (pp. 481) |
| 10 (P16.) | Email dated August 4, 1999 |
| 11 (P19.) | Letter from Searle to Streeter dated January 19, 2001 (see bate stamp 675-76) |
| 12 (P21.) | U.S. Equal Employment Opportunity Commission Dismissal and Notice of Rights |
| 13 (P23.) | MCAD/EEOC Complaint filed by Susan Searle and right to sue letters |
| 14 (P24.) | Salisbury Police Department Harassment, Sexual Harassment and Discrimination Policy |
| 15 (P28.) | Chart showing contacts with Searle (or attempts to contact Searle) from 8/8/01 to 8/29/01 (Dep. Harrison, Exh.9). |
| 16 (P29.) | Salisbury Police Department Sexual Harassment Policy (Dep. Searle, Exh. 6). |
| 17 (P31.) | OMITTED. |
| 18 (P32.) | Sexual harassment policy of Town of Salisbury. |
| 19 (P33.) | Three ring binder with Searle's "discipline history" |
| 20 (P35.) | Documents Relating to Dress Code |
| 21 (P35c.) | Certified Medical Records of William Jackson, M.D. |
| 22 (P36.) | Dispatcher Susan Searle Interview (Dep. Simmons, Exh. 8). |
| 23 (P37.) | Handwritten list (Dep. Simmons, Exh. 6). |

| | |
|---|---|
| 24 (P38.) | Grievances filed by Searle (including, without limitation, Exh 2 and 13 to depo. Searle) |
| 25 (P39.) | Schedule Inquiry for ID:  ENGJ from 11/24/2000 to 12/7/2000 |
| 26 (P40.) | Schedule Inquiry for ID:  ENGJ from 6/12/00 to 6/25/00 |
| 27(P41.) | Schedule Inquiry for ID:  ENGJ from 6/12/00 to 6/26/00 |
| 28 (P42.) | Letter dated January 19, 2001 from Searle to Roy |
| 29 (P43.) | Calendar (bate stamped 000700) |
| 30 (P44.) | Letter dated February 8, 2002 from Breslin to Streeter |
| 31 (P45.) | Letter dated February 27, 2002 from Breslin to McInerney |
| 32 (P46.) | Letter dated January 14, 2002 from Searle to McInerney (2) |
| 33 (P47.) | Letter dated September 20, 2001 |
| 34 (P50.) | Letter dated March 18, 2002 from Streeter to Searle |
| 35 (P51.) | *(OMITTED)* |
| 36 (P52.) | Document regarding Uniform Allowances for FY2002 (Doc. No. 572) |
| 37 (P54.) | Letter dated March 21, 2002 from Soini to Kelley |
| 38 (P55.) | Undated letter from Soini to Kelley (Doc. No. 658) |
| 39 (P56.) | Paystubs (including, without limitation, Doc. Nos. 663 through 682) |
| 40 (P57.) | Letter dated October 9, 2001 from Sandra Charton to Jeannine Rice |
| 41 (P58.) | Letter dated August 20, 2001 from Napoli to Streeter (Exh. 2 to Depo. Searle). |
| 42 (P59.) | Letter dated April 2, 2000 from Searle to Alder |
| 43 (P60.) | Letter from Searle to Streeter dated November 4, 2000 |
| 44 (P61.) | Salisbury Police Department Attendance records |
| 45 (P62.) | Emails from Streeter to Searle dated 8/7/01, 12/12/01, 6/12/02, 10/19/01, 9/25/01, 9/10/01, 5/24/02, 7/19/02, 8/14/02 (2), 11/14/02, 10/18/02, 9/27/02, 7/2/02 (2), 3/30/00 *(OMITTED)*, 3/29/00 *(OMITTED)* |
| 46 (P63.) | (OMITTED). |
| 47 (P64.) | Schedule Inquiry for ID:  SEAS from 6/22/00 to 7/06/00 and from 6/9/00 to 6/23/00 |
| 48 (P65.) | Searle and/or Richard grievances (Doc. Nos. 697-98) |
| 49 (P66.) | Documents (including, without limitation, pleadings) relating to Searle's wage claim against the Town of Salisbury |
| 50 (P67.) | Documents filed and/or rulings issued in the related MCAD action |
| 51 (P69.) | Any exhibit marked at any deposition. |
| 52 (P71.) | Department Of Employment And Training Documents, if admissible |
| 53 (P72.) | Any and all pleadings and attachments thereto. |
| 54 (P74.) | Any and all documents or other exhibits listed on any defendant's Pretrial Disclosures. |
| 55 (P75.) | Any and all documents necessary to rebut exhibits, testimony, and/or other evidence offered by any defendant. |
| 56 (P76.) | Any and all documents produced in responses to discovery requests and/or automatic disclosures by any party. |
| 57 (P77.) | Any and all answers to interrogatories. |
| 58 (P78.) | Any and all documents necessary to impeach or cross-examine any witness. |

| 59 (P79.) | Documents from Keeper of Records, Salisbury Police Department |
| 60 (P80.) | Motion to Amend filed at MCAD |

**DEFENDANTS' PROPOSED EXHIBITS OBJECTED TO BY PLAINTIFF**

| 1 (D1.) | 1998-2001 collective bargaining agreement between Town of Salisbury and AFSCME, Council 93. |
| 2 (D2.) | 2001-2003 collective bargaining agreement between Town of Salisbury and AFSCME, Council 93. |
| 3 (D3.) | 2003-2004 collective bargaining agreement between Town of Salisbury and AFSCME, Council 93. |
| 4 (D4.) | 2004-2007 collective bargaining agreement between Town of Salisbury and AFSCME, Council 93. |
| 5 (D5.) | 1999-2002 collective bargaining agreement between Town of Salisbury and Salisbury Patrol Officers |
| 6 (D9.) | Three ring binder regarding Susan Searle |
| 7 (D12.) | September 15, 2000 memorandum from Chief Streeter to Susan Searle |
| 8 (D13.) | December 22, 2000 memorandum from Chief Streeter to Susan Searle |
| 9 (D16.) | September 17, 2001 memorandum from Chief Streeter to T. McInerney |
| 10 (D22.) | Photographs of Susan Searle |
| 11 (D1.) | The defendants may introduce exhibits, other than those listed above, to rebut/impeach testimony offered by plaintiff. |
| 12 (D2.) | Any deposition exhibit. |
| 13 (D3.) | Any documents previously produced by any party prior to the time of this filing. |
| 14 (D4.) | Any affidavit of plaintiff and any documents referenced therein. |

The parties reserve their right to supplement their respective lists with reasonable notice to counsel.

### M.    Proposed Jury Instructions

The parties have attached their respective sets of Requests for Jury Instructions hereto as

Exhibits C and D.

### N.    Proposed *Voir Dire* Questions and Special Verdict Form

The parties have attached their respective sets of proposed *voir dire* questions as

Exhibits E and F, and their respective sets of proposed special verdict forms as Exhibits G and H.

The Plaintiff                              The Defendants
Susan Searle                               Town of Salisbury
By Her Attorneys,                          and Lawrence Streeter
                                           By Their Attorneys,


/s/ Paul J. Klehm_____                /s/ Joseph Fair (by PJK, with permission)
James B. Krasnoo  (BBO#279300)             David Jenkins (BBO # 251000)
Paul J. Klehm  (BBO#561605)                Joseph Fair (BBO # 637818)
Krasnoo/Klehm LLP                          Kopelman and Paige, P.C.
23 Main Street, Terrace Level              101 Arch Street, 12th Floor
Andover, MA  01810                         Boston, MA  02116
(978) 475-9955                             (617) 556-0007


Dated: _April 12, 2007_                    Dated: _April 12, 2007_

## CERTIFICATE OF SERVICE

I, Paul J. Klehm, Esq., hereby certify that I have served a copy of the within document

upon all counsel of record not served via ECF and upon all parties not represented by counsel by

first class mail, postage pre-paid, on April 12, 2007.

/s/ Paul J. Klehm_____
Paul J. Klehm