UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 2004CV10791RCL

| | |
|---|---|
| SUSAN SEARLE,<br><br>      Plaintiff,<br><br>v.<br><br>TOWN OF SALISBURY and LAWRENCE STREETER,<br><br>      Defendants. | <u>DEFENDANTS' MOTION IN LIMINE TO PRECLUDE CLAIMS FOR WHICH NO ADMINISTRATIVE CHARGE WAS FILED</u> |

Now come the Defendants Town of Salisbury (hereinafter, "Town") and Lawrence Streeter (hereinafter, "Chief Streeter") and respectfully move, in *limine*, to prohibit the Plaintiff, Susan Searle, (hereinafter, "Plaintiff") from introducing testimony or other evidence at trial regarding alleged acts of retaliation that were not alleged by her in the charge of discrimination that she filed with the Massachusetts Commission Against Discrimination and/or alleged acts of gender discrimination which were not alleged within the applicable statute of limitations, as Defendants believes Plaintiff will attempt to do. As grounds for the instant motion, Defendants rely on the within Statement of Reasons and Argument.

<u>STATEMENT OF REASONS</u>

1. Plaintiff was hired as a Police Dispatcher in 1994, but later resigned in 1996. She was later rehired as a Dispatcher in 1998.

2. In her Complaint in this matter, Plaintiff alleges that Defendants discriminated against her on the basis of her gender and retaliated against her for engaging in activity that is protected under G.L. c. 151B.

3.  With respect to her allegations of gender discrimination, Plaintiff alleges that Defendants discriminated against her by refusing to allow her to work paid traffic and construction details.

4.  With respect to her allegations of retaliation, Plaintiff alleges that Defendants retaliated against her for voicing her allegations of gender discrimination by placing her on administrative leave on or about August 1, 2001 and later terminating her employment.

5.  Plaintiff initially filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination (hereinafter, "MCAD") against the "Salisbury Police Department" (hereinafter, "Department") on August 29, 2001.  A true and accurate copy of Plaintiff's MCAD charge is attached hereto as Exhibit 1.

6.  In her MCAD charge, Plaintiff alleged that the Department was discriminating against her on the basis of her gender.  Specifically, Plaintiff asserted that she had been employed by the Department since 1994 and that despite her repeated requests to work paid details, Chief Streeter refused to allow her to do so.  She further alleged that two (2) police officers with the Department had filed separate false complaints against her.  See Exhibit 1.

7.  Nowhere in her MCAD charge does Plaintiff allege that either Defendant had retaliated against her for engaging in protected activity.  See Exhibit 1.

8.  Nowhere in her MCAD charge does Plaintiff allege Chief Streeter had, in his individual capacity, discriminated or retaliated against her.  See Exhibit 1.

9.  On or about December 20, 2001, Plaintiff filed a motion with the MCAD seeking to amend her charge of discrimination.  In that motion, Plaintiff stated that she was seeking "to add claims against Chief Streeter for sex/gender discrimination and retaliation" and to

add to her claim against the Town "reference to an upcoming pre-disciplinary hearing which Ms. Searle deems retaliatory." Exhibit 2 at 1. A true and accurate copy of Plaintiff's motion to amend is attached hereto as Exhibit 2.

10. On or about March 31, 2004, Plaintiff withdrew her MCAD charge for the purpose of filing the instant lawsuit. Complaint at ¶60.

11. At the time of said filing, the MCAD had not ruled upon Plaintiff's motion to amend her charge of discrimination and to Defendants' knowledge, the motion has never been acted upon. See Complaint at ¶58.

## ARGUMENT

In order to bring a claim under M.G.L. c. 151B or Title VII for sexual harassment, Plaintiff was required to first file an administrative charge with the MCAD. Jorge v. Rumsfeld, 404 F.3d 556, 564-65 (1st Cir. 2005); Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 531 n. 11 (2001). The failure to set forth a claim at the agency level generally warrants dismissal of the claim. Id. A claim that was not explicitly included in an agency charge may survive such a dismissal if it was within the scope of the agency investigation. Davis v. Lucent Tech., Inc., 251 F.3d 227, 233 (1st Cir. 2001). For a claim to fall within the scope of the investigation though, the plaintiff must "describe the essential nature of the claim [in the administrative charge] and … identify the core facts on which it rests." See Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996).

Nowhere in her charge of discrimination does Plaintiff ever allege that either Defendant retaliated against her for engaging in protected activity. See Exhibit 1. Similarly, nowhere in her charge does Plaintiff ever assert any claims against Chief Streeter individually. See id. That such claims were not encompassed within her charge of discrimination is evidenced by the fact

that Plaintiff filed a motion with the MCAD expressly seeking to _add_ such claims.  See Exhibit 2

at 1.  In doing so, Plaintiff herself was acknowledging that those claims were not within the

scope of the investigation of the charge that she had filed.

That Plaintiff's retaliation claim and her claims against Chief Streeter individually were

not within the scope of the agency investigation is further supported by the fact that claims for

retaliation and for individual liability are governed by separate and distinct theories of recovery

from the gender discrimination claim Plaintiff brought against the Town pursuant to G.L. c.

151B, §4(1).  In the case of retaliation, such a claim falls under G.L. c. 151B, §4(4) and requires

that Plaintiff demonstrate that 1) she engaged in a protected activity; 2) that the Town was aware

of the protected activity; 3) that she was subsequently subjected to an adverse employment

action; and 4) in the absence of other evidence establishing retaliatory intent, the adverse action

followed the protected activity within such time that retaliatory motive can be inferred.  See

Ritchie v. Department Of State Police, 60 Mass.App.Ct. 655, 664-65 (2004); Nassab v.

Massachusetts General Hospital, 22 MDLR 429, 444 2003).

As for claims for individual liability under 151B, those claims come within G.L. c. 151B,

§4 under an aiding and abetting theory of recovery.  See Orell v. UMass Memorial Medical

Center, Inc., 203 F.Supp.2d 52, 65 (D.Mass. 2002) citing Beaupre v. Cliff Smith & Associates,

50 Mass.App.Ct. 480, 491 (2000); see also Harmon v. Malden Hospital, 19 M.D.L.R. 157, 157-

158 (1997) (holding that individuals who actively perpetrate or assist in the acts forbidden by

§§4(4), (4A) and (5) can be held separately liable as aiders and abettors of the vicariously liable

employer deemed responsible for the discrimination against the employee under standard

concepts of accessory liability).

As the foregoing indicates, claims for retaliation and individual liability are legally separate and distinct from the gender discrimination claim that Plaintiff filed with the MCAD against the Town.   Completely absent from Plaintiff's MCAD is a description of the essential elements of her retaliation claims against either defendant and her gender discrimination claim against Chief Streeter individually.  See Lattimore, 99 F.3d at 464.  Since no charge of discrimination was ever filed with the MCAD regarding her retaliation claim against the Town or her claims against Chief Streeter individually, and since Plaintiff's motion to amend her charge was never acted upon by the MCAD, she is precluded from bringing those claims in the instant matter.  Jorge, 404 F.3d at 564-65; Cuddyer, 434 Mass. at 531 n. 11.  As a result, Plaintiff should be precluded from pursuing those claims at trial and should therefore be prohibited from introducing any evidence relative to them at trial.  See id.

WHEREFORE, the Town respectfully requests that this Court grant Defendants' Motion In Limine To Preclude Claims For Which No Administrative Charge Was Filed.

DEFENDANTS,

TOWN OF SALISBURY AND LAWRENCE STREETER,

By their attorneys,

/s/ Joseph S. Fair
David C. Jenkins (BBO# 251000)
Joseph S. Fair (BBO#637818)
Kopelman and Paige, P.C.
  Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110
(617) 556-0007

Dated:  April 12, 2007

312310/60700/0143

<u>Certificate of Service</u>

       This is to certify that on the date subscribed below I caused a copy of Defendants' Motion In Limine To Preclude Claims For Which No Administrative Charge Was Filed to be served through the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF) and that non-registered participants, if any, were served with paper copies of said document.

Dated: April 12, 2007                       <u>/s/ Joseph S. Fair       </u>

The Commonwealth of Massachusetts
Commission Against Discrimination

EXHIBIT 1

---

DOCKET NUMBER:01132403
FILING DATE:08-29-2001

EEOC/HUD NUMBER:
VIOLATION DATE:07/24/01

---

Name of Aggrieved Person or Organization:
Susan M. Searle
9 Prospect St.
Merrimac, MA 01860
Telephone Number: (978)346-7295

---

Named is the employer, labor organization, employment agency, or state/local government agency who discriminated against me:
Salisbury Police Department
ATTN: Lawrence E. Streeter
24 Railroad Ave.
Salisbury, MA 01952
Telephone Number:(978) 465-3121          No. of Employees:20 +

Work Location: Salisbury, MA

---

Cause of Discrimination based on:
Sex.
(Female).

---

The particulars are:
I, Susan M. Searle, the Complainant believe that I was discriminated against by Salisbury Police Department, on the basis of Sex. This is in violation of M. G. L. Chapter 151B S4 P1.

I began working for the Salisbury Police Department as a dispatcher and a sworn special officer on or around 08/94. I have always performed satisfactory work. During my employment I have been subjected to harrassement based on sex by the male officers in the department. Often I have asked Chief Lawerence Streeter if I could work a detail assignment. I am just as qualified as the male officers who do details. Every time he responds by telling me that my place is in dispatch and that no woman will ever work a detail in his department. I have been there eight years and have never worked a detail. The only full time woman who work in the department are dispatchers. When I voice my opinion in email, I am told that I am free to have an opinion, but it does not really count. I am constanly subjected to demeaning comments such as being told that I am only a woman and what I say does not matter. On or around 04/01, I heard Sergeant Kevin Sullivan saying that no male officer would be layed-off. The women would be layed off first becuase the men have careers. On 07/24/01, Inspector Richard Simmons and Sergeant William Packer informed me that Officer Eugene Scione and Sergean Sullivan had file two serperate complaints against me. Both complaints were false in thier statement of facts. I believe that I am being unlawfully discriminated against because I am a woman.

---

I swear or affirm that I have read this complaint and that it is

8/29/01

000566

true to the best of my knowledge, information and belief.

(Signature of Complainant)

SWORN TO AND SUBSCRIBED BEFORE ME THIS 29th Day of August, 2001

NOTARY PUBLIC: _Jerome E. Mack_

SIGNATURE    NOTARY    PUBLIC _Jerome E. Mack_  MY    COMMISSION
EXPIRES: _2/14/06_

EXHIBIT 2

COMMONWEALTH OF MASSACHUSETTS
MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION
Docket No. 01132403

| | |
|---|---|
| SUSAN M. SEARLE | ) |
|      Complainant | ) |
| v. | ) |
| SALISBURY POLICE DEPARTMENT | ) |
|      Respondent | ) |

## COMPLAINANT SUSAN M. SEARLE'S REBUTTAL TO RESPONDENT SALISBURY POLICE DEPARTMENT'S POSITION STATEMENT, ADDENDUM AND MOTION FOR LEAVE TO ADD CLAIMS AND PARTY[1]

Complainant Susan M. Searle hereby sets forth her rebuttal to Respondent Salisbury Police Department's Position Statement, her Addendum and her Motion for Leave to Add Claims and Party. For many years, Ms. Searle, a dispatcher for the City of Salisbury Poice Department, has been subjected to gender-based discrimination and retaliation from Chief Lawrence Streeter and other members of the Town of Salisbury Police Department. As female dispatcher, Ms. Searle has been treated differently from her male counterparts. She and other female dispatchers were insulted, demeaned, and prevented from working construction details because of their gender.

Through the motion to amend, Ms. Searle seeks leave to amend her Complaint in order to add more detail to her initial Complaint, which was filed before Ms. Searle had the benefit of counsel, and to include reference to an upcoming pre-disciplinary hearing which Ms. Searle deems retaliatory. She also seeks to add claims against Chief Streeter for sex/gender discrimination and retaliation. Ms. Searle submits herewith an Affidavit of Susan M. Searle.

---

[1]  The within document exceeds ten pages because it consists of three distinct documents: the Complainant's rebuttal, a list of witnesses and a motion for leave to add claims and a party to the within matter.

## I.  REBUTTAL AND ADDENDUM

### A.  Facts

In or around 1990, Lawrence Streeter became the Chief of Police of the Town of Salisbury.  In September, 1994, Susan Searle began working as a full-time public safety dispatcher for the Town of Salisbury, Massachusetts.  Through most of her tenure, Ms. Searle has also served as a liaison between the police department and the Newburyport District Court, assisting individuals in obtaining restraining orders.  In September, 1996, Ms. Searle left the Salisbury department voluntarily.  She returned in March, 1998, as a dispatcher.   Ms. Searle continually worked overtime shifts throughout her tenure at the Salisbury Police Department, and she performed her job duties professionally and well.  Ms. Searle has performed her job professionally and well.  In August, 2001, Ms. Searle was placed on administrative leave.

In or around 1994, Ms. Searle first approached Chief Streeter regarding the opportunity of performing traffic/construction details in Salisbury, thereby affording her an opportunity to earn additional income and to have greater responsibility.  In response, Chief Streeter laughed at Ms. Searle and told her to "forget about it."  Ms. Searle persisted from 1994 through May, 2001, repeatedly inquiring of Chief Streeter about traffic/construction details.  Chief Streeter consistently responded, "not gonna happen," or words to that effect.  Alternatively, he would ignore her requests.  At one point, Chief Streeter said, in essence, "no woman in my department would ever do a detail so shut up and get back to your job."  He made similar comments about his refusal to permit females to perform details throughout Ms. Searle's tenure at the Salisbury Police Department.  Ms. Searle asked Chief Streeter to place her on detail assignments on so many occasions that eventually his face would redden when Ms. Searle would even raise the

2

subject. Upon information and belief, there are no females from the Salisbury Police Department who perform police details, nor is Ms. Searle aware of any females performing such details from 1994 to the present.

During her employ, Ms. Searle has been designated as a sworn "special officer." At the initial hearing on this matter, Chief Streeter stated, for the first time, that the dispatchers cannot serve on details unless they have attended an intermittent academy - an eight week course covering certain public safety procedures. Nonetheless, Chief Streeter refuses, and has refused, to sponsor any females for attendance at the intermittent academy, and he never told Ms. Searle that she needed to attend the intermittent academy in order to handle detail work. In 2000, Chief Streeter sponsored a female, Kristen Kozacka, for the intermittent academy, but he refused her detail opportunities, despite her requests for same. She ultimately resigned from the department.

Over time, Ms. Searle grew concerned about the apparent shift away from quality police work to selfish concern about the amount each officer could earn in overtime and regular pay each year. Ms. Searle also noted with dismay the growing lack of respect shown by male officers to the female dispatchers on a daily basis, an attitude which hampered Ms. Searle and the other female dispatchers in the completion of their duties. When she would raise these and other concerns to Chief Streeter, both orally and in writing, he continually rebuked her. In response to one such effort on the part of Ms. Searle, Chief Streeter wrote, "Thanks Susan, but your opinion really isn't valued here. Thanks for trying however." (See **Exhibit A**).

While Chief Streeter refuses to permit female dispatchers to work construction details, he has allowed male dispatchers to do so. These male dispatchers have not been required to undergo the same comprehensive testing and training which the female dispatchers were forced

3

to complete. Chief Streeter has allowed male dispatchers to work construction details. Moreover, not until November, 2001, after this action was filed, did Chief Streeter require the male dispatchers to adhere to the same dress code as the female dispatchers. Females who violate the dress code were subjected to humiliation and degradation from Chief Streeter in the presence of co-workers.

Throughout her tenure, Ms. Searle has observed that female dispatchers must meet a higher standard of work performance than male dispatchers; otherwise, the female dispatchers are degraded and insulted by Chief Streeter and several of the male police officers. There are, and for many years have been, no female patrol officers in the Town of Salisbury Police Department.

In February, 2000, one of the dispatchers was involved in an automobile accident, which caused her to miss a significant amount of time from work. Chief Streeter altered schedules ot the female dispatchers work schedules without consulting them. He also hired two male special officers to handle certain shifts. When Ms. Searle protested the unilateral rescheduling, Chief Streeter refused to discuss the matter. Ms. Searle proceeded to bring the matter to arbitration. Before the hearing, Chief Streeter attempted to chill Ms. Searle's exercise of her rights by telling her that she was "wasting [his] time" and that Ms. Searle had no power to go up against him and his powerful connections. Such conduct constitutes an act of retaliation. Chief Streeter not only displayed this harsh attitude toward Ms. Searle; he was (and is) rude and unwelcoming to other female dispatchers as well. In fact, in or around November, 2000, Dispatcher Denise Richard resigned as a direct result of the years of alienation and insults which she had been subjected to from Chief Streeter. In or around May or June, 2001, Chief Streeter admitted to Ms. Searle that he felt bad about what his harsh and unfair treatment of Ms. Richard.

In general, Chief Streeter treats the patrol officers in the department (all of whom are male and male dispatchers) far differently than he treats the female dispatchers. He makes an effort to obtain various benefits for the male officers, such as computer equipment and extra overtime, without making any similar effort on behalf of the dispatchers. He belittles the female dispatchers in front of the male officers and other dispatchers.

In or around April, 2001, Ms. Searle heard Sergeant Kevin Sullivan of the Salisbury Police Department stating that no male officer would be laid off by the Town. He stated that the women would be laid off first, because the men have careers.

In June, 2001, Chief Streeter asked Ms. Searle, who was a union representative, while on his cellphone why she was bothering to proceed with contract negotiations on behalf of the dispatchers because there would be nothing left for "you girls" -- referring to the female dispatchers. He then laughed and told Ms. Searle that she was wasting her time. He then called Ms. Searle's issues and requisitions "trivial."

On July 24, 2001, Inspector Richard Simmons and Sergeant William Packer informed Ms. Searle that Officer Eugene Scione and Sergeant Sullivan had filed separate complaints against her. Both complaints contained false allegations. Ms. Searle believes that the scurrilous attacks were an effort to retaliate against Ms. Searle for seeking equal treatment for males and females within the department. On July 26, 2001, Ms. Searle forwarded a letter to Chief Streeter responding to the allegations. On July 27, 2001, Chief Streeter called Ms. Searle and told her not to return to work for the next four days. On August 1, 2001, Chief Streeter and Ms. Searle held a meeting arising out of Scione and Sullivan's allegations and her response thereto, in which she made further allegations of wrongful conduct within the department. At the meeting,

5

Chief Streeter displayed a large three ring binder containing hundreds of pages of what he claimed to be incidents of wrongdoing on the part of Ms. Searle which were contained in her personnel file. Until that point, Ms. Searle was unaware of almost all of the incidents referenced in that three ring binder. Ms. Searle requested a copy of her personnel file at that time. Chief Streeter even ordered Ms. Searle to visit a psychiatrist to see whether she was fit for duty.

On August 8, 2001, Chief Streeter, without any basis or reason therefor, placed Ms. Searle on administrative leave arising from an alleged 209A incident. Upon information and belief, the 209A incident is simply a pretext for Chief Streeter to attempt to dismiss or otherwise discipline Ms. Searle. Such an action is also retaliatory.

On September 20, 2001, not having received a copy of her personnel file as requested, Ms. Searle forwarded a letter to Chief Streeter via certified mail, return receipt requested, seeking a copy of her personnel file. M.G.L. c. 149 §52C requires the employer to produce a copy of the personnel file within five business days of a written request for same.

On or about November 27, 2001, in an act of retaliation, the Town served a letter upon Ms. Searle giving her notice of a Pre-Disciplinary Hearing regarding certain incidents. That hearing has yet to be held. On or about December 3, 2001, Ms. Searle's counsel entered a notice of appearance in this matter. On December 7, 2001, more than two months after the written request was made and shortly before the then scheduled pre-disciplinary hearing, Chief Streeter finally provided Ms. Searle, through her counsel, with a copy of her personnel file. The file includes hundreds of documents covering alleged incidents dating back to approximately 1994. Upon information and belief, as of the time Ms. MacLean retired as secretary to Chief Streeter in or around August, 2000, there were no negative entries or disciplinary entries in Ms. Searle's

personnel file. Upon information and belief, Chief Streeter, or one at his direction, created certain documentation after the fact in a fraudulent effort to discriminate and retaliate against Ms. Searle. Moreover, upon information and belief, Chief Streeter turned over the requested personnel file only on the eve of the hearing so as to prevent Ms. Searle from having the opportunity to defend herself consistent with concepts of due process.

Throughout Ms. Searle's tenure at Salisbury Police Department, she has witnessed Chief Streeter continually insult and degrade the female dispatchers, including, herself, for his own apparent amusement. He has often referred to women as "sluts" in Ms. Searle's presence, even after Ms. Searle and other dispatchers protested. Chief Streeter has also failed to take steps to prevent male officers from verbally abusing female dispatchers over the police radio, despite the fact that the dispatchers have repeatedly brought this situation to his attention.

From late 1999 or early 2000 through May 2001, Ms. Searle was subjected to various demeaning and insulting comments from Chief Streeter, often in the presence of her co-workers. He made demeaning comments about her looks and said other insults to her. In April or May, 2001, he told Ms. Searle that if her buttocks were any larger, he would need to purchase another dispatch chair.

Ms. Searle has not heard Chief Streeter insult or humiliate males in the presence of their peers.

Chief Streeter also treats males and females within the department differently in terms of wages and salaries. Females, including, without limitation, Ms. Searle, have had to adhere to waiting periods for pay raises, while males do not. New male dispatchers receive a higher rate of pay than new female dispatchers. Male dispatchers also receive preference for open shifts ahead of full-time female dispatchers.

7

Finally, the Town raises several allegations that Ms. Searle has engaged in inappropriate behavior as a means of somehow forgiving their discriminatory conduct. The Town claims that Ms. Searle had inappropriate photographs of herself taken for baseball cards to be distributed to children. The photographs in question were not intended to be distributed to children, and they were not. Instead, the photographer, an acquaintance of Ms. Searle, took the photographs so that Ms. Searle could give them to her husband. It is disingenuous of the Town to suggest otherwise. The Town also claims that Ms. Searle was found in a romantic embrace with a male member of the department in a female restroom. Such an allegation is completely unfair and false.

Even if Ms. Searle did act inappropriately on occasion, which she did not, her conduct has nothing whatsoever to do with the conduct of the Town and Chief Streeter in discriminating against Ms. Searle on the basis of her gender, and then retaliating against her when she attempted to stop the discriminatory conduct.

**B.**     Argument

**Complainant Susan M. Searle Has Demonstrated Probable Cause to Support Her Claims of Sexual/Gender Discrimination and Retaliation Against Respondents Town of Salisbury and Chief Lawrence.**

In order to demonstrate gender discrimination pursuant to M.G.L. c. 151B, the Complainant must first demonstrate *a prima facie* case of discrimination by a preponderance of the evidence. *Blare v. Husky Injection Molding Systems, Boston, Inc.*, 419 Mass. 437, 441 (1995). "For a prima facie case of gender discrimination, plaintiff must show: (1) she is a female, (2) she performed her job at an acceptable level, (3) she was terminated or subject to an adverse action, (4) she was treated differently than similarly situated male employees." *McKearney v. Answer Think Consulting Group, Inc.*, 2001 WL 417179 (Mass.Super.,2001).

Once the *prima facie* case standard has been met, the burden of proof shifts to the Respondent to rebut the presumption by showing a "legitimate, non-discriminatory reason" for the conduct. *Id.* If the Respondent meets that requirement, the Complainant has the burden of persuasion to show that the reason articulated by the employer was pretextual or that the actual reason for the conduct was discriminatory. *Id.* at 444.

Ms. Searle has demonstrated a *prima facie* case of gender discrimination. She is female, and she has performed her job well for several years. See *Beal v. Board of Selectmen of Hingham*, 419 Mass. 535, 544, 646 N.E.2d 131 (1995)(Court assumed, without deciding, that sole female police officer was in protected class). The large three-ring binder containing alleged incidents involving Ms. Searle constitutes a mere contrivance on the part of the Town in an effort to justify the attempts to dismiss her. One may wonder, if there were indeed so many alleged incidents of wrongful conduct on the part of Ms. Searle, how she could have possibly lasted so long at the department. She has performed her job professionally amid a hostile environment.

For several years now, Ms. Searle has been subjected to disparate treatment from her male dispatcher counterparts. She has been prevented from performing traffic/construction details, while her male dispatcher counterparts are allowed to do so. See *Riffelmacher v. Board of Police Commrs. Of Springfield*, 27 Mass.App.Ct. 159, 160, 535 N.E.2d 1280 (1989) (Judgment on gender discrimination charge brought by female who was not appointed police officer affirmed). She has been subjected to harsh treatment and inappropriate comments from the Chief and from male police officers, while the male dispatchers have faced no such wrongful treatment. She has experienced delays in

9

receiving increases in pay, while the male dispatchers have received theirs immediately. Ms. Searle has also been made the unfair subject of disciplinary proceedings.

Ms. Searle works in an environment which is hostile to women, where the Chief says that no women will ever work a detail, and where a male officer states that women will be laid off first, because males have careers. It is a town where there are no female patrol officers. There can be little question that Ms. Searle was treated differently from the male dispatchers because she is a female. See *Dalrymple v. Town of Winthrop*, 50 Mass.App.Ct. 611, 740 N.E.2d 204 (2000)(female officer prevailed against Town for retaliation and sex discrimination where, *inter alia*, female officer was not allowed to go on drug raid with male officers). The Respondent's efforts to cast its actions as legitimate and non-discriminatory are ineffectual. The Respondent makes no showing as to why women, including Ms. Searle, have been treated differently than men.

Ms. Searle also alleges retaliation claims against the Town and Chief Streeter. In order to demonstrate a *prima facie* retaliation claim, the Complaint must show (1) that she engaged in protected activity under Title VII or M.G.L. c. 151B or that she complained that those statutes had been violated, (2) that she suffered adverse employment action and (3) that there is a causal relationship between the protected conduct and the adverse action. *Lizenga v. Genesis Health Ventures of Massachusetts, Inc.*, 995 F.Supp. 226, 231 (D. Mass. 1998). Here, the more Ms. Searle attempted to correct the disparity in treatment between men and women, the more the Town, and, in particular, Chief Streeter, sought to punish her. More recently, Chief Streeter has attempted to bring disciplinary proceedings against Ms. Searle in retaliation for her

efforts to work details and to stop the disparate treatment of women. The Town's claims that Ms. Searle has performed poorly is merely a pretext.

In sum, Ms. Searle has demonstrated probable cause to support her claims of sexual/gender discrimination and retaliation against the Respondent Town of Salisbury and Chief Streeter.

## II.     Addendum

### A.  List of Dispatchers

Pursuant to the request of the Investigator, I include herewith a list of male dispatchers at the Salisbury Police Department:

Jason Kohan
Tony King
John Delorey
John Bianch
Denis Champagne, Jr.
James Leavitt
John Engle

None of the above listed males have more seniority than any of the female dispatchers, with the exception of Tony King, who is now a full-time officer at Salisbury.

I also list the full-time regular dispatchers at the Salisbury Police Department:

Kristine Harrison
Donna Powierza
Susan M. Searle
Ann Jones (permanent part-time — two days per week)
Denise Richard (resigned November 2000).

### B.  Other witnesses:

Denise Richard, former dispatcher, (978) 465-3007
Mary Dow, special officer, (207) 342-5360
Robin Dow, special officer,  (207) 342-5360
Kristen Kozacka, special officer/matron/meter maid, (978) 363-1227

11

Pamela Lutes, dispatcher, (978) 465-2727
Sergeant Edward Foote, second in command under Chief Streeter, (978) 462-9709
Danielle Beaulieu, (978) 556-9946
Lori Napoli, former fill-in dispatcher, (978) 688-1905 or (800) 734-0878
Patrolman Michael Alder, police officer, (978) 465-4752
Judith MacLean, Chief Streeter's Secretary from 1990-2000, (561) 664-4653
Patrolman Kevin Pike, police officer, (978) 366-0529

**III.**    **Motion to Amend**

Complainant Searle respectfully requests that the MCAD permit her leave to amend her

Complaint pursuant to 804 CMR 1.10(6) to include all of the allegations of discrimination and/or

retaliation set forth above and in her initial Complaint. Moreover, Ms. Searle seeks to amend her

Complaint to include claims against Chief Streeter as set forth herein and in her initial

Complaint. Ms. Searle was not represented by counsel as of the time she commenced her

MCAD action on August 29, 2001. Now that counsel has reviewed this matter, and amendment

to add these claims and to add Chief Streeter as a party is necessary. Chief Streeter will suffer no

prejudice from the allowance of the within motion, as he has been involved in this matter since

its inception.

**WHEREFORE,** Complainant Susan M. Searle respectfully requests that the MCAD
MAKE A FINDING OF PROBABLE CAUSE and GRANT Complainant's Motion for Leave to
Add Claims and a Party.

The Complainant
Susan M. Searle
By Her Attorneys,

_____
James B. Krasnoo (BBO #279300)
Paul J. Klehm (BBO#561605)
LAW OFFICES OF JAMES B. KRASNOO
23 Main Street
Andover, MA  01810
(978) 475-9955

12

## CERTIFICATE OF SERVICE

I, Paul J. Klehm, hereby certify that I forwarded copies of the within document to Sandra M. Charton, counsel to Respondents, Kopelman and Paige, P.C. 31 St. James Avenue, Boston, MA 02116-4102, by first class mail, postage pre-paid on December 21, 2001.

_____

Paul J. Klehm

13